THE FIRST NATIONAL BANK OF PEORIA, ILLINOIS, *et al.*, v. EDWARD S. JAFFRAY *et al.*

1. DEBTOR — *Insolvency* — *Conveyance as Security.* Absolute conveyances of real estate made by debtors to creditors, intended as a security for a *bona fide* existing indebtedness, are not void as to the other creditors, even if the debtors are insolvent, and the creditors have knowledge of the insolvency.

2. INSOLVENT DEBTOR — *Conveyance, Not Fraudulent* — *Record.* When insolvent debtors made conveyances of real estate to creditors, for the purpose of securing a *bona fide* indebtedness, and the creditors withheld the conveyances from record, with an honest belief that their indebtedness would be paid; and without any agreement or understanding with the debtors that the conveyances should be withheld from record, for the purpose of benefiting their debtors in some way, such conveyances are not fraudulent as to the other creditors because they were not recorded.

3. —————— *Unrecorded Deed — Fraudulent Intent.* The fact that creditors to whom debtors have made absolute conveyances of real estate that are intended as security, do not cause such conveyances to be recorded, is not, as an independent and isolated fact standing alone and disconnected from other suspicious circumstances, sufficient evidence of a fraudulent intent.

4. DEED BY DEBTOR, *When Good against Subsequent Creditor.* Voluntary conveyances of real estate made by debtors to creditors that were intended as security for existing indebtedness, are good as against subsequent creditors, unless it is shown that they were made by the debtors and accepted by the creditors, with the intent on the part of the debtors to contract debts with the subsequent creditors, and to defeat the payment of the debts so contracted.

*Error from Cowley District Court.*

THE opinion contains a sufficient statement of the case.

*Jack & Tichnor,* and *Mansfield, Eaton & Pollock,* for plaintiffs in error.

*Peckham & Henderson, Irwin Taylor,* and *Weighley, Bulkley & Gray,* for defendants in error.

Opinion by SIMPSON, C.: The First National Bank of Peoria, the plaintiff in error, is a corporation organized under the general banking laws of congress, doing business at the city of Peoria, state of Illinois. William E. Stone is the cashier of the bank. The defendants in error, E. S. Jaffray & Co., the Nonotuck Silk Co., Alonzo W. Rollins, Shaw & Co., King & Fildes, and the Merrick Thread Co., are merchants to whom Day Bros. & Co. were indebted for goods sold and delivered by them to Day Bros. & Co. after the 10th day of January, 1884. On the 1st, 2d and 4th days of October, 1884, and on the 2d day of December, 1884, these defendants commenced actions in attachment in various counties of Kansas against Day Bros. & Co., and caused the lands in controversy to be subjected to attachment liens for said indebtedness. Judgments were subsequently rendered in these actions against Day Bros. & Co., and the lands sold to satisfy said judgments. The defendants in error, Weigley, Burrows,

and Shaw, purchased some of the lands at the sheriff's sales, and took deeds therefor, and are made parties on that account. The firm of Day Bros. & Co. was engaged in the wholesale and retail dry-goods trade at Peoria, the firm consisting of Lucius L. Day, Herbert F. Day, Gordis R. Cobleigh, William G. Marsters, and Samuel H. Van Sickler. On the 10th day of January, 1884, the firm of Day Bros. & Co. was indebted to the bank in the sum of $53,000. The bank demanded payment, or security, and on that day Gordis R. Cobleigh and wife, one of the firm, in whose name the title was vested for the benefit of the firm, executed and delivered to W. E. Stone, cashier of the bank, for its benefit, eleven certain quitclaim deeds, conveying to Stone land in nine different counties in this state, for a stated consideration of $35,700. At the same time, another member of the firm deeded to Stone, for the benefit of the bank, real estate in Peoria of the value of $25,000. On the 23d day of September, 1884, the firm was indebted to the bank in the sum of $83,000, the bank having loaned Day Bros. & Co. $30,000 after the 10th of January, 1884. On that day (September 23d) there was a settleme n between these parties, and the indebtedness of the firm to the bank was adjusted as follows: $20,576.30 was to be paid by Chas. B. Day, who had bought out their stock of goods; $30,000 was to be collected and retained from commercial paper of customers of the firm, which had been delivered to the bank; $18,000 was secured by a trust deed on the homestead of Lucius L. Day; and the balance, $15,000, was to be considered secured by the Kansas and Nebraska lands conveyed by Cobleigh to Stone; and Stone executed a deed of defeasance, in which he recites the giving of the eleven quitclaim deeds, and agrees to reconvey the land to Cobleigh upon the payment of the sum of $15,000, with interest at eight per cent. per annum.

On the 3d day of October, 1885, this suit was commenced in the district court of Cowley county, seeking to have the nine quitclaim deeds made by Cobleigh to Stone, declared a mortgage to secure the sum of $15,000, and for a foreclosure

of the same.    The lands conveyed by the deeds are situate in the counties of Cowley, Ottawa, Lincoln, Russell, Ellis, Rush, and Barton, and are particularly described in the petition. At the time Cobleigh conveyed the lands to Stone, they were subject to some mortgage liens that were subsequently purchased by the bank, and a foreclosure is prayed as to them. At the trial a default was entered against Day Bros. & Co., William Jack, Leslie D. Puterbaugh, William H. Herren, Samuel W. McFarlin, Sarah J. McFarlin, Charles F. Leonard, James D. Curtis, and Francis M. Boyer.    The case was tried on the issues joined between the bank and the defendants in error.    E. S. Jaffray & Co., Alonzo W. Rollins, Shaw & Co., King & Fildes and the Merrick Thread Co. filed like answers, each setting up claims against Day Bros. & Co., upon which attachment had been issued and levied upon the lands described in the petition of the bank and of Stone.    Frank S. Weigley filed an answer, in which he denies the existence of any indebtedness by Day Bros. & Co. to the bank, on the 10th day of January, 1884; admits the execution of the deeds by Cobleigh to Stone, but denies that they were intended as mortgages, and alleges that they were made for the purposes of fraud. He denies that any of the indebtedness of Day Bros. & Co. to the bank remained unpaid on the 23d day of September, 1884, and alleges that it had all been paid; denies that the parties had an accounting on the 23d of September, 1884, and that said pretended deeds should represent a mortgage of $15,000. He alleges the insolvency of Day Bros. & Co. before the 10th of January, 1884, the bank's knowledge of their condition, and that there was some secret and fraudulent scheme entered into by and between the bank and Day Bros. & Co., by which the bank was to aid them in protecting their property from the efforts of creditors to collect their just dues, and that these pretended conveyances were executed and delivered for that purpose, and in pursuance of that corrupt and fraudulent agreement.    He then alleges that he is the owner in fee simple of certain tracts of said land, by virtue of being a purchaser at judicial sales made of such lands in proceedings had in

certain actions, wherein Rollins, Shaw & Co., Morrison, Herriman & Co., Edward S. Jaffray & Co., obtained judgments against Day Bros. & Co., and orders of sale of the land attached in these actions.

Edward D. Burrows filed an answer similar to that of Weigley, and he claims to be the owner of certain tracts of the land by virtue of judicial sales in actions brought against Day Bros. & Co. by other creditors.

Theodore A. Shaw filed an answer to the others, claiming to have purchased a portion of the land at judicial sale in a creditors' suit. They all prayed that the mortgage be declared fraudulent, for various causes hereinafter stated.

The claims of these defendants upon which they brought their actions in this state, and attached the various tracts of land involved in this controversy, were, with a few exceptions, contracted by Day Bros. & Co. with their creditors after the 10th day of January, 1884.

At the September term, 1886, the court below rendered a judgment in favor of the bank, against Day Bros. & Co., for $15,000; adjudged that the mortgage had been executed by Cobleigh, and received and accepted by Stone, and held by the bank, for the purpose and with the intent on the part of each and all of the parties to hinder, delay and defraud the creditors of Day Bros. & Co.; and that it is void as to these creditors, who are made defendants in error. All exceptions were saved, a new trial was asked for and refused, and the case is here for review on the whole record. All the evidence is in depositions and documents, and the questions of fact may be fully examined and determined. There are many errors assigned, but probably a few controlling questions will determine the case.

It is claimed by the defendants in error that the conveyances made by Cobleigh to Stone are fraudulent in fact, and void in law as against them as creditors of Day Bros. & Co. The principal facts relied on to support this judgment are: First, that Day Bros. & Co. were insolvent on the 10th day of January, 1884; second, that the bank knew of the insolvency;

third, that the bank failed or refused for over eight months to record the deeds; fourth, the bank represented to the public that the firm was solvent and composed of men of large property, after they knew of their insolvency; fifth, that the defendants in error relied upon such representations, and gave the firm of Day Bros. & Co. credit on the strength of them; sixth, that the arrangement entered into on the 23d day of September, 1884, between the bank, Day Bros. & Co., and Charles B. Day, was a fraudulent one as to the defendants as creditors of Day Bros. & Co.

While incidentally we will consider and pass upon many of the questions that have been so thoroughly discussed by counsel on both sides, both in their oral argument and in their elaborate briefs, we shall avail ourselves of the right to consider all the evidence in the case, as it is all embraced in documents and depositions, and decide the facts according to the evidence, and determine the case on its merits. It is doubtful whether there is such a finding of all the material facts of the case, in the judgment rendered by the court below, as authorizes us to send a mandate ordering a judgment in this case according to our direction, as contemplated by § 559 of the code. While there is no general finding of the court below, that the facts stated in the answer of the defendants are true, or that all the issues are found in their favor, there are some special findings on particular questions of fact, but they do not embrace all the material facts, and consequently do not conform to what is generally understood under our rules of practice, as "findings of fact." We shall endeavor to give all the questions arising in the case that broad and comprehensive view that is so earnestly urged by counsel for defendants in error. The evidence is very voluminous, and the questions discussed numerous, but some of the rules governing such actions are familiar, having been often determined by this court, and others well settled by the repeated adjudication of other tribunals.

I. The first complaint of counsel for the plaintiffs in error is, that the judgment rendered by the court below does not

conform to the issues made by the pleadings; or, to express it in other words, the court decided a case not presented. We think there is a more direct and controlling question, and in this view this complaint may be considered more as a technical than as a substantial cause of error. And yet there are some features of the judgment that give some force to this objection. A judgment must be predicated upon some findings of fact, and every finding outside of the issues of fact as made by the pleadings is a nullity; and hence every judgment rendered on a finding of fact not put in issue by the pleadings is erroneous. The issues in this case upon which the case should have been tried and determined, are made by the answers of Weigley, Burrows, and Shaw, and the replies of the plaintiff below thereto. These issues are: That these conveyances were made by Cobleigh to Stone, by reason of some scheme or arrangement entered into between Day Bros. & Co. and the bank, that the bank, for the purpose of aiding Day Bros. & Co. to protect themselves from their creditors, should hold these lands in trust for Day Bros. & Co. until they could effect a settlement with their creditors. The trial court found that at the time of making said deeds, Day Bros. & Co. were indebted to the bank in the sum of $53,000; that in order to secure the payment of the same, Day Bros. & Co. requested Cobleigh to execute said deeds to Stone; that a written defeasance was subsequently given, as claimed, whereby the deeds were to be held as a mortgage for the payment of $15,000, and that the said sum of $15,000, with interest, remains due and unpaid; that said lands are held as surety for the payment of that sum, and that the same was and is now valid and binding as a mortgage, between the parties thereto; and rendered a judgment in favor of the bank and against Day Bros. & Co., for $15,000 and interest, and yet found that at the time of the conveyance, Day Bros. & Co. were in embarrassed financial circumstances; that they were in contemplation and expectancy of bankruptcy, which facts were well known at the time to the board of directors, president and cashier of the First National Bank of Peoria, to which bank

the firm was indebted on the 10th day of January, 1884; that the deeds were received by Stone and accepted and held by the bank, for the purpose and with the intention on the part of all the parties aforesaid to hinder and delay the creditors of the firm of Day Bros. & Co.; and as a matter of law the court did find and declare that the conveyance so made by the said Cobleigh and wife to the said William E. Stone, on the 10th day of January, 1884, was and is fraudulent and void as to the defendants, the Nonotuck Silk Co., the Merrick Thread Co., Rollins, Shaw & Co., E. S. Jaffray & Co., King & Fildes, Theodore A. Shaw, Edgar D. Burrows, and Frank S. Weigley, and each and every one of said defendants. It seems rather difficult to make this judgment responsive to the issues as made by the pleadings. (*U. P. Rly. Co. v. Milliken*, 8 Kas. 647; *U. P. Rly. Co. v. Young*, 8 id. 658; *K. P. Rly. Co. v. Dunmeyer*, 19 id. 539; *A. T. & S. F. Rld. Co. v. Irwin*, 35 id. 286; *St. L. & S. F. Rly. Co. v. Fudge*, 39 id. 543.) It is more difficult to reconcile the judgment with some of the findings of fact made by the court. We shall not undertake to do either, for the reason that there is another question in the case which in our view determines it.

II. The primary question, the controlling fact, the foundation upon which all the correlative facts, inferences and legal conclusions rest, and upon which all the superstructure is built, is, whether or not there was at the dates of these various transactions an honest existing indebtedness on the part of Day Bros. & Co. to the bank? If this fact is not satisfactorily established, if there is grave doubt of the existence of such indebtedness, then the fraudulent intent, like a poisonous fluid, would penetrate the innermost recesses of each individual act of the parties, and its virulence destroy the whole transaction. We have carefully read all the evidence in the record, and there is not a single utterance in all this large mass of bifarious testimony that casts a shadow of doubt on the *bona fides* of the indebtedness of the firm of Day Bros. & Co. to the bank. This fact being established, all the efforts of the bank to secure the payment of the indebtedness, and

to protect its stockholders from ultimate loss, must be viewed in the light of commendable anxiety; and at the same time some reasonable allowances must be made for the merchants struggling against adverse circumstances to keep in the current of prosperous business.

We shall assume for the present that the finding of the first and second facts above recited, that Day Bros. & Co. were insolvent on the 10th day of January, 1884, and that the bank knew of that insolvency, are sufficiently established by the evidence. We add to those findings another, that at that date the firm was indebted to the bank in the sum of $53,000. This latter fact is included in the judgment. Its force, however, is sought to be broken by counsel for the defendants in error, by the statement that the court below did not determine the validity of the indebtedness of Day Bros. & Co. to the bank; that the bank obtained a judgment by default against the debtor firm for the amount claimed. There is an express finding that the firm of Day Bros. & Co. was indebted to the bank on the 10th day of January, 1884, in the sum of $53,-000, and that it was indebted to the bank on the 23d day of September, 1884, for $15,000, with these lands mortgaged to' secure that sum, with interest. The one fact alone, and beyond all others, that is made plain and convincing by the evidence in this record, is, that there was at the respective dates of each of these transactions a *bona fide* indebtedness by Day Bros. & Co. to the bank. The legal effect of these three conjunctive facts: of *bona fide* indebtedness, insolvency of the debtor, and knowledge by creditor of the insolvency, on payments made or security taken from the insolvent debtor by the creditor, with knowledge of the insolvency, has often been declared by this court in the cases of *Chapman v. Summerfield,* 36 Kas. 610; *Kennedy v. Powell,* 34 id. 22; *Bailey v. Kansas Mfg. Co.,* 32 id. 73; *Baughman v. Penn,* 33 id. 505; *Tootle v. Coldwell,* 30 id. 125, and other cases. These cases all hold that an insolvent debtor can convey property to his creditor to pay or secure his indebtedness, when the creditor has knowledge of his insolvency, or of his financial

embarrassment; and some of them go to the ex-
tent of upholding the sale or security when it
includes all the property of the debtor; and others
uphold the sale or security when made or executed
by the debtor with the fraudulent intent to hinder
and delay his creditors, if the creditor to whom the sale is
made or security given has no knowledge of the intended
fraud.   These findings are not therefore sufficient to sustain
this judgment.

1. Insolvent debtor; conveyance to secure debt; creditor's knowledge of insolvency.

III. The third fact established and claimed to sustain the
judgment is, that the bank held the deeds from the 10th day
of January, 1884, until the 1st day of September of that
year, without having them recorded.   The first consideration
touching these deeds is to determine if possible the precise
circumstances or conditions under which they were executed.
The record to some extent furnishes these conditions.   The
bank claims that they were taken on the day of their date as
collateral security for the indebtedness of Day Bros. & Co.,
which then amounted to $53,000, and was unsecured.   The
bank at this time considered Day Bros. & Co. perfectly good,
and this was the sole and only reason why they were not re-
corded.   The firm of Day Bros. & Co. had been in business
in the city of Peoria ever since the year 1856.   There had
been frequent changes in the persons composing the firm, but
it had grown from small proportions until the firm transacted
business to the extent of nearly one million dollars yearly.
It carried large stocks of goods in three large establishments,
and had large outside property.   For years it had been doing
business through the bank, and to all outside appearances was
thriving and prosperous.   It was indebted to the bank in the
sum of $53,000 at this particular juncture.   In the exercise
of an ordinary business prudence, the bank asked to be secured,
and these deeds were executed as security, with an honest be-
lief on the part of the bank at that time that the firm was
solvent and able to pay.   The deeds were quitclaims, and
there were some prior mortgage liens upon the lands, and these

are circumstances tending to show that they were not intended as absolute conveyances, and were not taken in payment of the indebtedness. The consideration expressed on the face of the deeds, with that expressed in the deed to the real estate in the city of Peoria, and the value of the lands conveyed by these deeds, as stated in the record, did not exceed the amount of the indebtedness secured thereby. We have no doubt under all these circumstances, but that at the time of the execution and delivery of the deeds it was the confident expectation and honest belief of the bank, and very probably of the firm, that the indebtedness would be paid and the securities surrendered.

The subsequent relinquishment by the bank of a large part of the consideration expressed in the deeds, and its execution of the written defeasance by which they were to be held as a mortgage only, to secure the sum of $15,000, with interest, strongly corroborate the claim of the bank in this respect. If this was the only suspicious circumstance of fraud tending to show a fraudulent intent or conspiracy to defraud other creditors, it would not have much weight; and we do not believe that any court, considering the fact as an independent and isolated one, would hold that it was sufficient of itself to establish a fraudulent intent on the part of the grantor and grantee. For the purposes of this case, it must be considered in reciprocal relation with the others heretofore commented on; and viewed in the light that the creditor took a conveyance from an insolvent debtor, knowing of the insolvency, and withheld the conveyance from record for about eight months, it would seem that under such circumstances some very reasonable explanation ought to be given for such an omission to follow the dictates of an ordinary business caution. Whether the withholding of a deed or mortgage from record, as in this case, is a circumstance tending to prove a fraudulent intent as to creditors, has so far not been determined by this court, although it has been the subject of some judicial discussion in other tribunals in cases arising principally in bankruptcy. The view we entertain of it now is, that as an

3. Conveyance by debtor to secure creditor, not recorded; when not sufficient evidence of fraudulent intent. independent and isolated fact, standing alone and disconnected with other suspicious circumstances, it would not be sufficient evidence of a fraudulent intent; but taken in connection with a chain of circumstances, as a link in the chain, it might be regarded as one of those premeditated omissions that lead the mind to an irresistible conclusion that a certain series of acts, either of omission or commission, were deliberate and for a well-defined purpose. If we eliminate the knowledge of the bank of the insolvency of Day Bros. & Co. at the time the deeds were executed and delivered, the withholding of them from the record is satisfactorily explained. We have so far proceeded upon the hypothesis that the bank had knowledge of the insolvency. But having carefully considered all the evidence bearing on this question, as well as the acts of the parties, we are led to the conclusion that at the time of the execution and delivery of the deeds the officers of the bank did not know or believe that the firm of Day Bros. & Co. was insolvent. The subsequent action of the parties cannot be reconciled on such a theory. Giving the officers of the bank credit for ordinary business sagacity, it is not to be supposed for an instant that, with a knowledge of the insolvency of the firm on the 10th day of January, 1884, they would subsequently loan the firm the sum of $30,000. Another bank in the same city advanced the firm large sums of money after that date, with equal opportunities for learning its true condition. A former partner, who had sold out his interest in the firm some years before, indorsed its paper for large amounts after that date. Such acts as these by the banks, and by the former partner, with a knowledge of the firm's insolvency, are incomprehensible to the ordinary business mind. We 2. Deed withheld from record; satisfactory explanation. have no hesitation in saying that the great weight of the evidence is to the effect that at the time of the execution and delivery of the deeds, the bank did not know or believe that the firm of Day Bros. & Co. was insolvent; and in this view, the explanation it offers for withholding the deeds from record is consistent and satisfactory.

45—41 KAS.

IV. The fourth fact alleged and relied on to establish the fraudulent intent is, that after the 10th day of January, 1884, the bank represented to the public that Day Bros. & Co. were solvent, and men of large property. The evidence tending to establish this fact consists of the statements of the resident agents of Bradstreet's and Dun & Co.'s mercantile agencies. They testify that Stone always, at the interviews they had with him in the years 1882, 1883, and 1884, represented the firm as solvent and prosperous; and during the year 1884 he represented the firm was worth, in his estimation, all the way from a quarter to a half-million above its liabilities. They showed Stone a report of the resources of the firm signed by its members, showing a net surplus of over $250,000, and Stone said he thought it was correct. Stone never made any mention of the amount the firm owed the bank, or made any reference to the Kansas land. He was never asked any questions about these things by the commercial agents.

. We have examined the statements made in January, 1882, by L. L. Day, for the firm, and delivered to the resident agent of Bradstreet's; it contains no allusion to lands in Kansas or Nebraska. Day says in his statement that the firm possesses outside real estate, estimated at the value of $90,000. In the transmitted reports of the resident agent we find no allusion to "outside real estate" after the above date, until the 10th day of September, 1884, when in an additional report he says that the following statement has been made by a party conversant with their affairs. In this statement the Kansas land is estimated at a value of $30,000. This reference to the Kansas land was long after the liabilities of the defendants in error were contracted. In the copies of the reports made by Nettle, the resident agent of Dun & Co., there is no reference to real-estate investments by the firm. The firm is credited with outside investments to the value of $125,000, but there is nothing in the reports indicating the character of the investments.

These statements, made by Stone to the commercial agents in 1882, 1883, and up to the 10th day of May, 1884, are all

consistent with his own dealings with the firm, and we have
not much doubt but that at the time he expressed his thoughts
— that the expression was induced by an honest belief in the
solvency of the firm.   The strongest evidence imaginable that
he so believed are the facts that the securities he had taken
for the indebtedness of the bank had not been recorded, and
that he had permitted the indebtedness to largely increase.
We are bound to conclude on this state of facts that whatever
was said by Stone with reference to the financial condition of
Day Bros. & Co. at the various dates of these interviews was
the expression of an honest belief.   He made no specific rep-
resentation regarding the financial standing of the firm.   He
said he estimated it worth a large amount of money over and
above its liabilities; that he thought the statement it made of
its property was correct.   He answered general questions in
comprehensive terms, without making any special representa-
tion on any particular matters connected with the business or
property of the firm.   He answered according to his honest
belief, as exemplified by his own dealings with the firm both
before and after the interviews.   So that there is an entire
absence of evidence either by act or word tending to show that
he knowingly made a false representation, or that he made any
statement or representation with the fraudulent intent to use
the commercial agencies as instruments to accomplish a fraud
upon these creditors.   There is no evidence in this record that
authorizes a court to say that either of the necessary elements
of the principle of estoppel, to wit, a representation of mate-
rial facts, knowing them to be false, made with the intent that
parties dealing with Day Bros. & Co. in the future should be
induced thereby to give them credit, is established.

While this disposes of the question of estoppel, we cannot
refrain from noticing the character of the evidence by which
it is claimed that the creditors were induced to extend credit
to the firm by the representations of Stone.   These creditors,
without exception, state that they were induced to give credit
to the firm of Day Bros. & Co. by reason of the regular
standing of the house, its general reputation, their dealings

with it in the past, the reports of the commercial agencies, inquiries and examinations, and references from other parties. All these things were inducements to extend credit. No one of them testifies that he gave the firm credit, relying on the representations made by Stone to the commercial agents. We have noticed the fact elsewhere, that the bulk of the indebtedness of Day Bros. & Co. to these creditors was contracted after the 10th day of January, 1884. Some stress is laid upon the fact, that if these creditors had known of the conveyance of the Kansas and Nebraska lands, credit would not have been extended to the firm. The truth is, that not one of them had any knowledge that the firm owned such lands, the first reference to these lands being contained in the report of Bradstreet, made on the 10th day of September, 1884, long after credit had been extended. It is safe always to say, that if a creditor knew the exact financial condition of a failing debtor, he would not have extended the credit. This closes our estimate of the facts, and the evidence tending to establish them. The facts shown by this record do not sustain the judgment rendered by the court below.

V. There remain some legal questions to be determined. The first contention is, that the deeds in question are void for want of power in the bank under its charter, to take them for the purposes claimed. (Revised Statutes U. S., §§ 5137, 5200.) This contention is disposed of so far as this court is concerned, by the case of *Orrin v. National Bank*, 16 Kas. 341. Under the provisions of the national banking law, the right to take real-estate security for a preëxisting indebtedness is expressly granted. At the time these deeds were executed and delivered to Stone, for the benefit of the bank, there existed a *bona fide* indebtedness from the firm of Day Bros. & Co. to the bank, that had been running for months before the deeds to the real estate were executed as security for this indebtedness, and under these circumstances the bank had the right to take real-estate security. We do not comment on the fact that the deeds were made to W. E. Stone and not to the bank, because if they were in the name of the bank as grantee, it would make no

difference.    The deeds were, in fact, executed for the benefit. of the bank.

VI. The next contention is, that the plaintiffs' right to relief is based upon an express parol trust, and such trust cannot be declared and enforced under the laws of Kansas. It is within the statutes of fraud.    Comp. Laws of 1885, ch. 114, §§ 1, 2, 3, and the cases of *Brake v. Ballou*, 19 Kas. 397, and *Simpson v. Mundee*, 3 id. 72, are cited to sustain this proposition.    In the case of *Brake v. Ballou*, the plaintiff, who was not an actual settler on the Osage diminished reserve, procured the defendant to enter upon a certain quarter-section of land and purchase the same from the government, under a parol agreement that the plaintiff would furnish the purchase-money and all necessary means therefor, and deed it to the plaintiff, in consideration of which the plaintiff was to deed the defendant a certain other eighty-acre tract.    The defendant refused to convey, as by the terms of the act of congress, these lands could only be sold to actual settlers.    The plaintiff commenced his action to procure the title to the land from the defendant. This court held that, as this particular contract concerning the purchase and conveyance of land belonging to the United States was in violation of the spirit and words of the statute and in fraud thereof, it could not be enforced in equity, and that no trust resulted.    The case is plainly distinguishable from the one we are considering.    The other citation, *Simpson v. Mundee*, is a case wherein it is held by this court that the old equitable doctrine of vendor's lien is repugnant to the general policy of our real-estate law, and does not exist in Kansas.    A reference to some other cases decided by this court will dispose of this contention.    It is said in the case of *McDonald v. Kellogg*, 30 Kas. 170:

"In Kansas, every deed of conveyance, whether absolute or conditional upon its face, and whether made to a trustee or not, if made for the purpose of securing a debt and for that purpose only, is a mortgage."

(See also the cases of *Moore v. Wade*, 8 Kas. 380; *Kirkwood v. Koester*, 11 id. 471; *McNamara v. Culver*, 22 id. 661; and *Bennett v. Wolverton*, 24 id. 284.)

The only question in cases of this kind is as to the consideration of the conveyance: whether it is an absolute conveyance for the sum expressed, or given to secure a certain sum; and as we understand, this inquiry is open in all courts. It does not fall within the provisions of the statutes cited, or of the authorities quoted.

VII. The last contention that we shall notice is, that the conveyances are fraudulent and void as against the creditors of the grantor. To state this proposition more concisely, it is claimed that the law is that a conveyance executed by an insolvent debtor to his creditor, absolute on its face, but with the agreement and understanding that it should operate only as a security, is fraudulent and void as to other creditors. It is asserted in the brief of counsel for defendants in error, and strongly insisted upon, that there is an imperative rule of law that declares that when an insolvent debtor in fact makes a conveyance to a creditor, absolute on its face, but with the understanding that it should operate only as a security, such conveyance is fraudulent and void as to creditors who become such after the execution and delivery of the conveyance; that the insolvency of the debtor, the execution of the absolute conveyance, and the agreement that it should be held and considered as a security, are of themselves sufficient evidence of the fraudulent intent, and that when these three things exist and unite in the same transaction, the rule applies. Many authorities are cited that are claimed to support this view, and among them are the cases of *McDonald v. Gaunt*, 30 Kas. 693, *Clark v. Robbins*, 8 id. 574, and *Wallach v. Wyley*, 28 id. 138. There is no color of authority in the cases decided by this court to support such a claim. One of the cases decided is to the effect that in a general assignment for the benefit of creditors made under the statute, the debtor cannot reserve a portion of the goods assigned for his own benefit. The other two cases are decided on familiar principles, that are not in any respect similar to the rule contended for, and may be dismissed from consideration with the absolute assurance that they do not tend in any degree to support this contention.

The case of *Blennerhassett v. Sherman*, 105 U. S. 100, is said to be a leading case establishing this rule.  The court finds from the facts that at the time the mortgage in question was given, the mortgagor was insolvent, and the mortgagee knew it; that his credit might not be impaired, the mortgage was purposely withheld from the record; that during this period of concealment, the mortgagee was industriously engaged in sustaining the credit of the mortgagor, and to accomplish it falsely and fraudulently represented him to be worth a million of dollars, and of unlimited credit; that by means of this representation, and the concealment of the mortgage and withholding it from the record, the creditors of the mortgagor were misled, and in consequence thereof had, between the date of the execution and registration of the mortgage, deposited large sums of money in the private bank of the mortgagor, which remained unpaid.   Now these facts are found in the case: the debtor is insolvent; the creditor knew it; the mortgage was purposely withheld and actually concealed for fear that it might impair the credit of the mortgagor. All this was done with a fraudulent intent; specific, false and fraudulent representations as to the wealth and credit of the mortgagor; creditors deceived and misled by the representations — all these facts concurring, and all establishing the fraudulent intent, both on the part of the mortgagor and mortgagee.   Surely that is not this case.

It is probably the law — and it ought to be — that where there is an agreement that the mortgage or conveyance shall be kept off the record for fear that it might impair the credit or hasten the failure of an insolvent debtor, then that such a conveyance or mortgage is a fraudulent one as to the creditors; but this does not reach the principle contended for in this case. In the many cases cited, and in the many more that can be found in the reports, there is not one that goes to the extent claimed.    There are cases which hold that when an insolvent debtor conveys real property to a creditor, or gives a mortgage, and the consideration expressed in the conveyance or mortgage, or the value of the property conveyed, or the amount stated

in the mortgage, is in great excess of the indebtedness; and the creditor knew of the insolvency; and there was an agreement to withhold the conveyance or mortgage from the record, for reasons beneficial to the mortgagor or grantor; and creditors were misled by such agreement, that the conveyance was void and fraudulent as against creditors. But our research has failed to find an adjudication in any of the reports, that the execution of an absolute conveyance by a debtor to a creditor, that was intended only to secure an honest existing indebtedness, is from this circumstance alone fraudulent as to creditors. When it is connected with other acts, all suspicious in character, it is often enumerated as one of several things from which a fraudulent intent can be inferred as a matter of fact; but it is not regarded as presumptive or conclusive of fraud, unless it is accompanied by a number of other omissions or commissions that have become to be regarded by all courts as indices of fraud. Under all the circumstances of this particular case, we do not regard the execution and delivery of the conveyances with any degree of suspicion. They were only a part of a reasonable security for the amount of the indebtedness. They were taken without previous inquiry as to their value, without examination as to their title, and without knowledge of their situation or surroundings, and with the distinct understanding that they were to be regarded as collateral security, and with the confident expectation on the part of the bank that the indebtedness secured thereby would be paid. That they were not taken with any fraudulent intent, is demonstrated very satisfactorily by the subsequent release of the bank of their value above and beyond $15,000, for it was the representative of the bank that executed the defeasance, and first put upon record the fact that the conveyances were, in effect, a mortgage to secure that sum.

VIII. There is still another view of this transaction to be taken, that is fairly authorized by the facts established by the record. We have already several times adverted to the fact that the debts of the firm of Day Bros. & Co. to these defendants in error were contracted after the 10th day of Jan-

uary, 1884; that these creditors had no knowledge of the Kansas and Nebraska lands until about the 10th day of September, 1884; that the credit was not given to the firm of Day Bros. & Co. by the mercantile firms that are the defendants in error in this action, on account of the ownership of the Kansas and Nebraska lands. These concurrent facts establish the proposition that the defendants in error are creditors subsequent to the conveyances; and that the conveyances could not have been accepted by the bank with the intent to defraud these subsequent creditors, there being no evidence that would warrant even a slight inference that the firm of Day Bros. & Co. intended any such fraudulent action, or that the bank had knowledge of any such intention on their part. The defendants in error, then, are subsequent creditors to the full extent and meaning of the words. The conveyances must be held good as against them, unless there is evidence to show that they were made by the firm and accepted by the bank with the intent on the part of Day Bros. & Co. to contract debts with the defendants in error, and to defeat the payment of debts so contracted. This is the law of this state as declared by this court in the case of *Sheppard v. Thomas*, 24 Kas. 780. See also the cases of *Hanson v. Power*, 8 Dana, 91; *Keeler v. Ullrich*, 32 Mich. 88; *Whitescarver v. Bonney*, 9 Iowa, 480; *Morrill v. Kilner*, 113 Ill. 318; *Silverman v. Greaser*, 27 W. Va. 550; *Reeg v. Burnham*, 55 Mich. 39; *Crawford v. Beard*, 12 Ore. 447; *Hausmann v. Hope*, 20 Mo. App. 193; *Walker v. Bollmann*, 22 S. C. 512.

4. Deeds by debtor, when good against subsequent creditors.

In the case of *Sexton v. Wheaton*, 21 U. S. 229, Chief Justice Marshall, speaking of a subsequent creditor, says: "In this case the title never was in Joseph Wheaton; his creditors therefore never had a right to trust him on the faith of the house and lot." In this case the title to the Kansas and Nebraska lands never vested in Day Bros. & Co., and these defendants in error had no legal right to rely upon the ownership by the firm of these lands and having no right to do so, they cannot question the validity of the conveyances made by Cob-

leigh to Stone, because at the time these conveyances were delivered they were not creditors, had no interest in the matter, and because at the time they subsequently became creditors they had no knowledge of the ownership of these lands by their debtors.

IX. We find an existing indebtedness by Day Bros. & Co. to the bank on the 10th day of January, 1884, in the sum of $53,000; that this indebtedness was secured by the conveyances made on that day of the Kansas and Nebraska lands, and by other property; that the conveyance of the Kansas land was made by Cobleigh, and received by Stone as security only; that Stone and the bank had an honest belief that Day Bros. & Co. would pay, and for that reason alone did not record the conveyances; that the bank had no knowledge of the insolvency of Day Bros. & Co. on the date of the delivery of the conveyances; that on the 23d day of September, Day Bros. & Co. were indebted to the bank in the sum of $83,000; that this indebtedness was secured by a mortgage on L. L. Day's homestead in Peoria, for $18,000; $20,576.30 was agreed to be paid by Chas. B. Day; $30,000 was to be collected and retained from commercial paper of customers of the firm, which paper was delivered to the bank; the balance, $15,000, was to be considered secured by the conveyances of the Kansas land, and Stone, in pursuance of the original agreement, that day executed a written instrument reciting the fact that the conveyances were to be considered as security for the sum of $ 15,000, with interest, and when that sum was paid, the lands were to be reconveyed to Cobleigh, the grantor; that sufficient of the commercial paper was collected to pay the $30,000, and the balance of the paper not necessary to be used by the bank was subsequently turned over by the bank to the assignees of Day Bros. & Co., amounting to over $9,000, and this applied to the benefit of creditors; that there cannot be deductively inferred from these facts that there was a fraudulent intent on the part of the bank and its officers to perpetrate any fraud on the other creditors of the firm; that the bank, as a vigilant creditor, had the legal right to amply protect

itself against loss, and to make such arrangements, and take such a class of securities, as would enable it to speedily realize the indebtedness to the bank; that these various acts of the bank are not welded together by a corrupt purpose to aid the firm of Day Bros. & Co. in hindering, delaying or defrauding their other creditors; but that these transactions occurred in natural succession, and in a fair strife against loss.

We think the judgment was wrong — both technically and substantially wrong; and we recommend that it be reversed, and the cause remanded with instructions to the court below to grant the plaintiffs in error a new trial.

By the Court: It is so ordered.

All the Justices concurring.