No. 26,296.

THE UNION NATIONAL BANK OF WICHITA, *Appellee,* v. J. E. KRAMER, OTIE A. KRAMER, *Appellees;* THE STOCK YARDS LOAN COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. FRAUDULENT CONVEYANCES—*Subsequent Creditors—Preference—Fraud—Evidence.* In a controversy as to the right to a bank deposit claimed by the wife of one who was indebted to others, which the creditors sought to have applied to claims against the debtor, on the theory that the deposit belonged to the debtor, and that the claim of the wife that it was the proceeds of a sale of land which belonged to her, and that the land had been previously acquired in payment of a debt owed by the husband to her, was fraudulently acquired, and that she had no valid claim on the deposit, it is held that the finding of the trial court that there was a *bona fide* indebtedness of the debtor to his wife, that the payment of the same through a transfer of land was made in good faith and was not a fraud upon his creditors, and that the deposit belonged to her, was supported by sufficient evidence.

2. TRIAL—*Objection to Evidence—Scope of Objection.* Objections to the competency of evidence does not raise the question of the competency of a witness to testify.

3. WITNESSES—*Competency—Transactions with Persons Since Deceased.* The testimony of the wife in the case as to communications and dealings with her husband, then deceased, as to his acquisition and ownership of the deposit, was admissible.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed June 12, 1926. Affirmed.

*C. H. Brooks, Willard Brooks, Howard Fleeson, George Gardner,* all of Wichita, *J. N. Watson, R. E. Watson, John B. Gage* and *Henry N. Ess,* all of Kansas City, Mo., for the appellants.

*Benjamin F. Hegler* and *A. V. Roberts,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:    This action was brought by the Union National Bank of Wichita, the holder of a deposit claimed by several parties, in which the court was asked to determine to whom the deposit should be paid, and in the petition the plaintiff stated that it was ready and willing to pay the deposit to the person or persons

Appeal and Error, 3 C. J. p. 829 n. 81; 4 C. J. p. 776 n. 57. Fraudulent Conveyances, 27 C. J. pp. 522 n. 11, 558 n. 33, 639 n. 23, 643 n. 79, 801 n. 54, 828 n. 12, 830 n. 19. Trial, 38 Cyc. p. 1756 n. 1. Witnesses, 40 Cyc. pp. 2278 n. 48, 2301 n. 16.

Union Nat'l Bank v. Kramer.

entitled to the same. It was alleged by plaintiff that on December 7, 1920, N. O. Tate deposited in the bank the sum of $8,210.70, to the joint account of J. E. Kramer and Otie A. Kramer, and subject to their check. Shortly afterwards a garnishment summons was served upon plaintiff in the action of H. Hatfield against J. E. and Otie A. Kramer; later another garnishment summons was served on plaintiff in the suit of the Citizens State Bank of Belle Plaine against the Kramers; still later plaintiff was served with a garnishee summons in the action of the Stock Yards Loan Company against the Kramers. Each of these garnishing parties claimed the money on deposit, and it was also claimed by Otie A. Kramer as her property. All the claimants were made parties defendant in this action.

The contention of the creditors was that J. E. Kramer was insolvent when the Tate land, the title of which had been placed in Otie A. Kramer, was purchased; that he purchased the land with his own funds and placed the title in the name of his wife with the intent to defraud his creditors; that no money had been loaned to him by his wife and that he was not indebted to her when the Tate land was conveyed to her. Otie A. Kramer's contention was that in 1901 she received from her aunt the sum of $15,000, which amount she turned over and loaned to her husband, and that in 1919 before he became indebted to the complaining creditors, and in response to her request that he pay or secure the payment of the money previously loaned to him, he caused the title to the Tate land, that he had purchased, to be placed in his wife's name; that at the time of the conveyance to her he owed her about $33,000; that it was not done to defraud creditors, but to pay a valid obligation, and that the deposit in question was the final payment made on the purchase of her land. Upon the testimony received the trial court made the following findings of fact:

"1. On December 7, 1920, one, N. O. Tate, deposited in the Union National Bank of Wichita, Kansas, plaintiff herein, eight thousand two hundred ten and 70/100 dollars ($8,210.70) to the credit of J. E. Kramer and Otie A. Kramer, defendants herein.

"2. The defendant, Otie A. Kramer, had no knowledge at the time said deposit was made that said deposit had been made to the joint credit of herself and her husband, J. E. Kramer, and said deposit was made by the said Tate without consulting either the defendant, Otie A. Kramer, or J. E. Kramer, as to whose name the money should be deposited in.

"3. The defendants, J. E. Kramer and Otie A. Kramer, were husband and wife. The defendant, J. E. Kramer, died intestate September 8, 1921, subsequent to the making of said deposit and subsequent to the bringing of this action.

"4. The said sum of eight thousand two hundred ten and 70/100 dollars ($8,210.70) deposited by N. O. Tate was the balance of the purchase price of a farm in Scott county, Kansas, which the said Tate purchased from the defendant, Otie A. Kramer. All negotiations regarding the purchase of the farm by Tate were had between Tate and J. E. Kramer, husband of Otie A. Kramer. The record title of the farm at the time it was purchased by Tate was in Otie A. Kramer.

"5. J. E. Kramer purchased the said Scott county farm in 1919 and had the seller convey it to Otie A. Kramer, so that at all times while the farm was in the possession of the Kramers the record title stood in Otie A. Kramer.

"6. The farm was purchased by J. E. Kramer and title taken in the name of Otie A. Kramer prior to the time that the said J. E. Kramer became indebted to the defendants, Stockyards Loan Company, H. Hatfield, and the Citizens State Bank of Belle Plaine, Kansas, but after the defendant became indebted to the intervener, the First National Bank in Wellington, Kansas.

"7. The defendant, Otie A. Kramer, was presented by her aunt, Phœbe Parkinson, with sums aggregating the sum of fifteen thousand dollars ($15,000). This amount she turned over to her husband, J. E. Kramer, in 1901 to handle for her. J. E. Kramer invested the money, first, in a flour mill in which he was the heaviest stockholder, and afterwards took it out of the flour mill and invested it in other ways. About the time that J. E. Kramer bought the Scott county farm, his wife asked him to secure her in some way for her money which he had. It was with the intent of repaying to his wife what he owed her that he purchased the Scott county farm and took the title in her name.

"8. The court finds that the purchase of the Scott county farm and the taking of the title in his wife's name was not done by J. E. Kramer to defraud, hinder or delay his creditors, but was done with the intent and purpose of reimbursing his wife in part for her moneys amounting to fifteen thousand dollars ($15,000), of which he had had the use for eighteen years and for which he had paid no interest.

"9. The court further finds that in addition to turning over the Scott county farm to Otie A. Kramer, J. E. Kramer had also turned over to her seven thousand one hundred dollars ($7,100) in Liberty bonds, and a home in Wichita which was subject to a mortgage. The amount of said mortgage does not appear from the evidence.

"10. The court finds that at the time J. E. Kramer delivered the Scott county farm to Otie A. Kramer and the Liberty bonds and the house in Wichita, he was indebted to her in the sum of fifteen thousand dollars ($15,000), with interest at the rate of 6 per cent per annum from the year 1901, or about thirty-three thousand dollars ($33,000).

"11. The total purchase price paid by Tate for the Scott county farm was eighteen thousand two hundred ten dollars ($18,210). Five thousand dollars ($5,000) was deposited in the plaintiff, Union National Bank, to the credit of O. A. Kramer. It appears, however, that this account of O. A. Kramer was opened by J. E. Kramer, and that the defendant, Otie A. Kramer, had no knowledge of it. It does not appear that she ever received the five thousand dollars ($5,000) which was deposited in this account. Otie A. Kramer knew

nothing of this account until the evidence in regard to it was introduced at the trial of this case."

As conclusions of law the court decided that the placing of the title to the Tate land in Otie A. Kramer was not done with the intent to defraud creditors, but it was to return to her a part of the moneys which he had held since 1901. That the deposit in question was the property of Otie A. Kramer; that the $15,000 received by J. E. Kramer from her was not a gift to him, but was loaned to him to handle for her according to his best judgment, and that the creditors had no claim on the deposit by reason of the indebtedness of J. E. Kramer to them. The Stock Yards Loan Company and the Citizens State Bank appeal, and insist that the findings and judgment are unsupported by the evidence.

The principal points discussed on the appeal involve questions of fact which have been determined by the trier of the facts. They relate mostly to the matter of whether J. E. Kramer was actually indebted to his wife when the Scott county land was transferred to her as a payment of indebtedness, and also to the claim of the insolvency of J. E. Kramer when the property was turned over to her, and whether it was done by him with the intent to defraud his creditors. An examination of the evidence in the record is sufficient to show that Otie A. Kramer received $15,000 in 1901 and that she loaned and turned it over to her husband to be invested and handled for her benefit. We have no hesitation in saying that the proof is sufficient to uphold the finding that there was a *bona fide* indebtedness of Kramer to his wife, and further that the land was transferred to her in payment of that indebtedness. The deposit in question was the final payment on the land, and if she was the owner of the land and had legally acquired it she was the owner of the deposit and entitled to recover it.

There was considerable testimony about the financial condition of J. E. Kramer and as to his insolvency when the transfer was made as a payment to his wife. The evidence presented related largely to his financial condition about two years after the land transaction and payment. The appellants were subsequent creditors, and the burden was upon them to show such fraud as would defeat the transfer in payment of the debt to Mrs. Kramer. (*Dodd Brown Co. v. Hills & Kramer*, 21 Kan. 707; *Long Bros. v. West & Co.*, 31 Kan. 298, 1 Pac. 545; *Baughman, Sheriff, v. Penn*, 33 Kan. 504, 6 Pac. 890; *Bank v. Chatten*, 69 Kan. 435, 77 Pac. 96.)   The

transfer was not open to the attack of subsequent creditors unless it was made in contemplation of future indebtedness to those designed to be defrauded by the transfer. (*Sheppard v. Thomas,* 24 Kan. 780.) There was no testimony that the transfer was made with a view of defrauding subsequent creditors, and no testimony that if there was any fraudulent intent on the part of Kramer that his wife had knowledge of it or participated in it. Long before the indebtedness to appellants arose the transfer to appellee had been placed on the public records, and appellants can hardly insist that their claims were incurred on the faith that the property belonged to the debtor. The insolvency of J. E. Kramer at the time of the transfer was a far-drawn inference. A statement of his made in 1919 to obtain credit was to the effect that his assets exceeded his liabilities more than $200,000, while at the time of his death, two years later, he was insolvent. The fact that he was insolvent in 1921 does not prove that he was insolvent in 1919. Large fortunes have been lost and wealthy men have become insolvent in much less time. Even if it had been shown that he was then owing large sums to others, and was in fact insolvent, he had a right to prefer her claim providing she had a *bona fide* indebtedness against him and was not guilty of fraud. (*Monroe v. May, Weil & Co.,* 9 Kan. 466. *National Bank v. Jaffray,* 41 Kan. 694, 21 Pac. 242; *National Bank v. Croco,* 46 Kan. 629, 26 Pac. 942; and other authorities therein cited.) Of course the fact that the preferred creditor is the wife or a near relative of the debtor, requires a close scrutiny of the facts as to the existence of a valid indebtedness and the good faith of the payment, but it must be assumed that the trial court gave due consideration to the relation of the parties and to all circumstances in evidence as to their motives and purposes. Considerable is said in argument as to suspicious circumstances which it is insisted tend to show bad faith in the transaction, but granting that some of the evidence tended to sustain the claim of appellants, there was evidence tending to uphold the findings of the court, and as the matters involved were questions of fact, its determination of these issues upon conflicting evidence ends the controversy.

A question is raised as to the competency of Otie A. Kramer to testify in relation to her dealings with her husband. Most of her testimony was received without objection to the competency of the witnesses. Some objections were made as to competency of evidence, as, for instance, that it was leading, hearsay and not within

the issues of the case, but these objections did not raise the question as to the competency of the witness. (*C., K. & N. Rly. Co. v. Behney*, 48 Kan. 47, 28 Pac. 980.) Most of the testimony as to the dealings of the witness with her husband was drawn out by appellants on cross-examination. One objection was made under R. S. 60-2803, as to a communication with her husband, but none appears to have been made under R. S. 60-2804. Even if the question may be said to have been raised, the witness was not testifying for or against her husband. The husband was not a party to the action. If the objection had been made under R. S. 60-2804, it would not have been good. The action was brought to determine the right to a deposit and not to the title of land. The title to it was derived by the witness from Tate. It was never in her husband, and no claim was made to it by his heirs or grantees. The appellants do not come within the class enumerated; that is, neither of them was an executor, administrator, heir at law, next of kin, surviving partner, or assignee of the deceased. H. Hatfield, who was named as a defendant, was the administrator of Kramer's estate, but it appears that he disclaimed any interest in the land and is not appealing from the decision. If part of the testimony was incompetent as to one party, it devolved on the plaintiff to ask the court to limit the application of the testimony to the one against whom it was competent, but this was not done. (*Taylor v. Deverell*, 43 Kan. 469, 23 Pac. 628.) More than that, the case was tried by the court without a jury, and it may be presumed that the judge disregarded any evidence that was incompetent. No error was committed in the admission of evidence.

The judgment is affirmed.