No. 35,052

C. E. Sawyer, *Appellant*, v. Fred Goyette and Waive Goyette, His Wife, et al., as the sole and surviving heirs at law of Frank Goyette, Deceased, *Appellees*.

(109 P. 2d 157)

Opinion filed January 25, 1941.

*Kenneth H. Foust,* of Iola, for the appellant.

*G. M. Lamer, DeWitt M. Stiles,* both of Iola, and *L. T. Cannon,* of Humboldt, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was an action to set aside a deed and to have a decree that the grantee holds the property in trust for the payment of plaintiff's judgment against the grantor. The trial court sustained a demurrer to plaintiff's petition, and he has appealed.

The allegations of the petition may be summarized as follows: On February 20, 1918, Frank Goyette was the owner of 760 acres of land in Allen county. On that date he and his wife, for a recited consideration of one dollar and love and affection, conveyed one quarter section of the land to their son, Fred Goyette, by a general warranty deed which contained this paragraph:

"He [the grantee] is to pay one-third (⅓) of all crop raised on said farm for as long as his father and mother live, and until all debt is paid, then he to have the use of the farm for as long as he lives, then his wife to have the use

of the farm for as long as she remains his widow, then to the heirs of his body, if none is living at that time it will come back to the Frank Goyette estate."

This deed was recorded August 7, 1920, in the office of the register of deeds of Allen county. The grantors executed similar deeds for specific parts of the land to others of their children so that by all of the deeds all of the land had been so conveyed.

On December 4, 1924, D. R. Goyette, one of the sons of Frank Goyette, borrowed $10,000 from the Iola State Bank, giving a note therefor signed by himself and his wife. On November 25, 1927, there was unpaid on this note and its renewals, the sum of $9,000, and the maker desired to increase his loan to $12,000. The bank declined to do that unless there was some security. On that date Frank Goyette executed in writing to the bank his guarantee of the payment of the note of $12,000 with interest. This recited that the bank held as collateral security for the note 95 shares of the capital stock of the Peoples State Bank of Moran, which the bank agreed to hold, and if the guarantor should be required to pay the note he was to be subrogated to the rights of the bank to the stock. On the same date Frank Goyette executed a written property statement to the bank which listed among his assets 760 acres of Allen county land. Questions in the statement as to in whose name the title to the real estate was held, and whether it was fee simple or leasehold, were not answered.

On September 1, 1929, the unpaid principal on the note to the bank was $11,000, and on that date D. R. Goyette and wife executed a new note to the bank for that sum, and at that time Frank Goyette executed his guarantee and property statement similar to those previously executed.

On September 2, 1930, there was a balance due on the debt to the bank of $10,250, and a new note for that sum was given to the bank signed by D. R. Goyette and wife, and by Frank Goyette. Thereafter and prior to April 21, 1932, the Iola State Bank sold, endorsed and delivered the note to the plaintiff herein, C. E. Sawyer. He sued the makers of the note, and on July 23, 1932, obtained a personal judgment against each of them for the amount then due.

Frank Goyette died intestate March 17, 1933. His wife's death had preceded his. He left as his sole heirs at law, his four sons, Fred Goyette, J. C. Goyette, R. D. Goyette and L. E. Goyette, his daughter, Lucy Ohlfest, and a grandson, Frank Goyette, Jr. His estate was not administered upon. On July 11, 1933, plaintiff's

judgment was revived against the heirs at law of Frank Goyette and an execution was issued thereon which has been returned wholly unsatisfied.

It was alleged that the deed of February 20, 1918, from Frank Goyette and wife to their son, Fred Goyette, was made with the intent and purpose of placing the real estate beyond the claims of creditors, including subsequent creditors; was without a good and sufficient consideration and for the intent and purpose of hindering, delaying and defrauding creditors, including subsequent creditors of Frank Goyette; that until his death Frank Goyette retained dominion, control, and was in the actual, open and notorious possession of the land, and defendants made no claim of ownership thereto, and that by his guarantee and property statement Frank Goyette obtained the credit represented by the judgment. The prayer of the petition was that the deed to Fred Goyette be set aside and held for naught, and that the court adjudge and decree that the real estate described therein was held by Frank Goyette in trust for the payment of plaintiff's judgment.

This action was brought May 2, 1934. All of the heirs at law of Frank Goyette were made parties defendant. The second amended petition was filed January 27, 1939, and then for the first time it alleged when the judgment was revived in 1933, that execution was issued thereon and returned unsatisfied. Also, for the first time, it was alleged that the deed of February 20, 1918, was executed not only for the purpose of defrauding existing creditors, but for the purpose of defrauding subsequent creditors.

We turn now to the legal questions. The allegations in the petition respecting the property statements and the written guarantees executed by Frank Goyette to the bank appear important only as a part of the history of the financial transaction. No action ever was brought on either of these written guarantees. More than that, the obligation of Frank Goyette, by reason of having executed those, became enlarged and his liability became more definite on September 2, 1930, when he signed the note with D. R. Goyette and wife to the bank for the sum then due. It is not improper to say that his liability on the guarantees previously existing became merged in his liability on this note. At any rate they are no longer of any importance. The fact that Frank Goyette in his property statements to the bank listed among his assets 760 acres of land in Allen county was an incomplete as distinct from a false statement. He had an

interest in the land properly classified as real estate. (G. S. 1935, 77-201, ¶ 8; *Hogan v. Manners*, 23 Kan. 551.) We need not speculate on why the questions asked in the statement, as to in whose name the title stood, and whether his title was a fee simple or otherwise, were not answered. The deed of February 20, 1918, had been of record seven years and three months before the first of these statements was executed. Perhaps the officers of the bank knew of the deed. Certainly they had constructive notice. In this petition it was not alleged the statement was false, or that it was made to deceive the bank. In short, the suit is not based upon fraud in executing those property statements.

The allegation that the deed of January 20, 1918, was executed by Frank Goyette with the intent and purpose of defrauding his creditors, including future creditors, is a statement of a conclusion, without a fact alleged to support it, upon which an issue could be joined and a trial had. There is no allegation that Frank Goyette had any creditors when the deed was executed, or when it was recorded. One cannot be said to attempt to defraud a group which does not exist. Ordinarily a voluntary conveyance is voidable only as to existing creditors. In *Voorhis v. Michaelis*, 45 Kan. 255, 25 Pac. 592, it was held:

"A voluntary conveyance made to defraud creditors is void only as to prior and existing creditors, and to those designed to be defrauded by the conveyance." (Syl. ¶ 2.)

There are circumstances under which a conveyance may be fraudulent as to subsequent creditors (*McPherson v. Kingsbaker*, 22 Kan. 646), but—

"It must be made to appear either by positive evidence or by facts which justify the inference that the conveyance was executed with an actual, fraudulent intent on the part of the grantor to defraud creditors, where there was none at the time the conveyance was made." (27 C. J. 521.)

And see *Sheppard v. Thomas*, 24 Kan. 780; *National Bank v. Jaffray*, 41 Kan. 694, 21 Pac. 242; *Union Nat'l Bank v. Kramer*, 121 Kan. 180, 246 Pac. 976. Where the grantor has no existing debts, and there is no fraud in the conveyance made, the land conveyed is not liable for the future debts of the grantor. (*Sanderson v. Streeter*, 14 Kan. 458.)

When a subsequent creditor of a grantor of a deed to real property seeks to set aside the deed as being fraudulent as to him he has the burden of alleging and proving facts reasonably tending to show

the grantor intended to defraud him. (*Bank v. Chatten,* 69 Kan. 435, 77 Pac. 96.) No such facts are pleaded here. The deed was executed February 20, 1918, and recorded August 7, 1920. The note upon which plaintiffs obtained the judgment now sought to be collected was executed September 2, 1930. There is no allegation of any fact tending to show that ten or twelve years before this note was executed Frank Goyette intended to defraud anyone. The petition does not state facts sufficient to constitute a cause of action to set aside the deed on the ground of fraud. In reaching this conclusion we have not considered the statute of limitations which alone, apparently, would justify the same conclusion.

Appellant argues that in any event he is entitled to the income from the land until his debt is paid. He stresses the provision in the deed that the grantee is to pay one-third of all crops raised as long as the grantors live, "and until all debt is paid," and argues that this means all debts of the grantors at the time of their death. We think the provision is not open to that interpretation. We think it referred to no more than all debt due at the time of the death of the survivor of the grantors, which, by accepting the deed, the grantee agreed to pay, which was one-third of all crops raised on the farm. To give it the broad interpretation contended for by appellant might very well, and would in this instance, render of no value that which was conveyed to the grantee by the deed. Appellant cites cases pertaining to the powers of courts of equity and argues his contention made on this point would be equitable. Our view is to the contrary. By the provision in this deed the grantee was to pay to the grantors practically what was rent for the land during their lifetime. In addition to that he was under obligation to pay the taxes on the property, not to commit waste, and to make such improvements, or betterments to existing improvements, as he desired. In our judgment it would be inequitable to him to give the language used the broad interpretation contended for by appellant.

We find no error in the judgment. It is therefore affirmed.

WEDELL, J., not sitting.