Mary Gangawer, Appellant, *v.* Philadelphia & Reading R. R.

*Negligence—Railroads—Grade crossings—"Stop, look and listen."*
    In an action to recover damages for the death of plaintiff's husband killed at a grade crossing, it appeared that at the point where the accident occurred the general direction of the railroad was north and south.   There were two tracks, one for the north- and one for the south-bound trains.   The deceased, driving in an open two-horse farm wagon, came from the highway traveling eastward, crossed the south-bound track, and was struck by a train bound north on the other track.   In approaching the railroad, he

168b 265
181   388
181   497

168        265
  Case 2
d208      ¹448

168        265
  Case 2
210         97

stopped at a point about forty feet from the track where a train could be seen coming from either direction for eight hundred or one thousand feet. As this distance diminished on nearing the track the view of the railroad was rapidly extended until at the crossing a train could be seen for more than a third of a mile. The undisputed evidence showed that the deceased could have seen the train which killed him, if he had looked when he was fifteen or twenty feet from the track. *Held*, that the deceased was guilty of contributory negligence, and that plaintiff was not entitled to recover.

In such a case the fact that the deceased stopped, looked and listened at a point forty feet from the railroad, did not exempt him from the charge of contributory negligence, if he drove forty feet to the crossing, with an approaching train in view.

Argued March 28, 1895. Appeal, No. 127, Jan. T., 1895 by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1892, No. 289, entering compulsory nonsuit and refusal to take it off. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before ARNOLD, J.

At the trial it appeared that Edwin G. Gangawer, plaintiff's husband, was killed on June 11, 1892, at a grade crossing of the Bethlehem division of defendant's railroad, near a station called Bingen. He was driving in an open two-horse farm wagon and was struck by an express train on the north-bound track, after he had crossed the south-bound track. Further material facts, with the description of the crossing and neighboring locality are given in the opinion of the Supreme Court.

Jacob Weaver, a witness, having testified as to the place where signals were given by approaching trains at the time of and prior to the accident, was asked:

Q. " Was there any change made after that? "

Objected to.

Counsel for plaintiff offers to prove that prior to this accident the railroad company gave the signal for this crossing at a point about 1000 feet from this crossing, and that subsequently to the accident they made a change in that respect, and gave their signal and have continued to give their signal for the crossing at a point about 600 feet further from the crossing—that they changed the signal posts a few days after the accident.

Objected to. Objection sustained and exception for plaintiff. [3]

The same witness, having testified to examining the wagon tracks in the road and finding only one broad-tire track such as that made by Gangawer's wagon, was asked:

Q. " Was there anything in that track to indicate that Mr. Gangawer had stopped ? "

Objected to.  Objection sustained and exception by plaintiff. [4]

Q. " Was the track, as it approached the railroad, continuous, or was there any breaking or irregularity in it? "

Objected to.  Objection sustained and exception for plaintiff. [5]

Frank Brinker, a witness, having testified to his familiarity with the road by which Gangawer approached the crossing, was asked:

Q. " Do you know where it is customary for people to stop, look and listen for trains ? "

Objected to.  Objection sustained and exception for plaintiff. [6]

Q. " You, being a person frequently using this road, what do you think is a proper place to stop, look and listen for trains ? "

Objected to.  Objection sustained and exception for plaintiff. [7]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) entry of nonsuit; (2) refusal to take off nonsuit; (3–7) rulings on evidence, quoting the bill of exceptions.

*Preston K. Erdman*, for appellant.—The proper place to stop is a question of fact and the testimony of witnesses is a proper and competent method of establishing it: Ellis v. R. R., 138 Pa. 506 ; McGill v. R. R., 152 Pa. 331 ; Groner v. Canal Co., 153 Pa. 390 ; Newhard v. R. R., 153 Pa. 418 ; Wharton on Evidence, sec. 21 ; Schum v. R. R., 107 Pa. 8 ; Keng v. R. R., 160 Pa. 644 ; Hoffmeister v. R. R., 160 Pa. 568 ; Downey v. Traction Co., 161 Pa. 131. .

*Gavin W. Hart*, for appellee.—The deceased was guilty of

contributory negligence : Ely v. R. R., 158 Pa. 233 ; Carroll v. R. R., 12 W. N. C. 348 ; Moore v. P. W. & B. R. R., 108 Pa. 349 ; Bell v. R. R., 122 Pa. 58 ; Marland v. R. R., 123 Pa. 487 ; Irey v. R. R., 132 Pa. 563 ; Kraus v. R. R., 139 Pa. 272 ; Cleary v. R. R., 140 Pa. 19 ; Blight v. R. R., 143 Pa. 10 ; Hauser v. R. R., 147 Pa. 440 ; Ash v. R. R., 148 Pa. 133 ; Schmidt v. R. R., 149 Pa. 357 ; Matthews v. R. R., 148 Pa. 491 ; Myers v. R. R., 150 Pa. 386 ; Urias v. R. R., 152 Pa. 326 ; Smith v. R. R., 160 Pa. 117.

OPINION BY MR. JUSTICE DEAN, May 20, 1895 :

The plaintiff is the widow of Edwin G. Gangawer. Her husband, while driving a two-horse farm wagon near Bingen station, over a grade crossing of defendant's railroad, about 8 in the morning of 11th of June, 1892, was struck by an express train and killed. The plaintiff averred her husband's death was caused by defendant's negligence in not giving travelers on the highway, at a proper distance from the crossing, warning of the approaching train. The defendant replied by denying its negligence, and averring negligence on part of deceased. When plaintiff closed her evidence, the learned judge of the court below, being of opinion she had not made out a case clear of contributory negligence, directed a compulsory nonsuit, which afterwards, on motion, he refused to take off, and from that judgment we have this appeal.

Appellant prefers here seven assignments of error ; three of them to the entry of judgment of nonsuit, and four to rejection of evidence. To warrant the judgment of nonsuit, either plaintiff's evidence must have failed to show negligence of defendant, or, having adduced evidence tending to make out her case in that particular, must also have disclosed the fact that her husband was guilty of contributory negligence. Assuming there was some evidence of negligence on the part of the railroad, and sufficient so far as concerns that question, to have sent the case to the jury, did plaintiff's evidence also show that her husband, by his negligence, contributed to the accident ?

The general direction of the railroad at this point is north and south ; there are two tracks, one for north, the other for south-bound trains ; the deceased came from the highway, traveling eastward ; crossed the south-bound track, and was struck

by the train bound north on the north track; at a point about forty feet from the track, a train can be seen coming from either direction for eight or ten hundred feet; as this distance diminishes on approaching the track, the view of the railroad is rapidly extended, until at the crossing, and before getting on it, a train can certainly be seen for more than a third of a mile. There is no dispute as to these facts. There was evidence that two or three cars stood on a siding some distance above the crossing; but the same evidence showed that these did not obstruct the view of the track, as it was approached in the direction from which deceased drove. One of plaintiff's witnesses, Jacob Weaver, testified that he saw the accident when standing alongside the railroad nineteen hundred feet from the crossing in the direction from which the train came. So, assuming that no sufficient warning was given, the train that killed deceased was in full view before he drove upon the track; it is absolutely impossible that he should have been upon the crossing, with too short a time to get off, before the train was in sight; unquestionably, taking the undisputed evidence adduced by plaintiff, the train that killed deceased could have been seen, if he had looked, when he was fifteen to twenty feet from the track; was in sight when he was that distance from danger and could have stopped in safety until it had passed. It is urged that he stopped, looked and listened forty feet from the railroad; let this be so; surely that does not exempt him from negligence, if he drove forty feet to the crossing, with an approaching train in view. It is wholly immaterial, in the face of these facts, whether the deceased stopped, looked and listened at the best place before approaching the track; the law presumes that he did, and, in the absence of other evidence, this presumption would have carried the case to the jury; but the plaintiff went further, and proved that, after stopping where he is presumed to have stopped, he then drove for forty feet to a point where he was bound to know a coming locomotive which he saw would probably strike him. That is not the care according to the circumstances, which the law demands; previous care in stopping does not absolve from subsequent negligence, any more than care at a crossing one day will dispense with care the next.

As to the assignments of error to the rejection of testimony, tending to show affirmatively that deceased stopped, looked and

listened at a point forty feet from the crossing, the ruling of the court did plaintiff no harm. The offer was to prove what in the absence of the other undisputed facts, the law presumed. He did stop, and then drove a distance of forty feet, with a train in full view every step of it. The appellant argues, it was for the jury to answer whether deceased was guilty of contributory negligence; this is so, where the plaintiff's case is clear of contributory negligence, and defendant has put in evidence tending to establish it; or even where the plaintiff's evidence, as in Ely v. Railroad Co., 158 Pa. 233, warranted opposite inferences. But this case comes under neither head. Assume, that the speed of this train was the unusual one of a mile a minute, of which there is no proof; then, take the uncontradicted testimony of Weaver, plaintiff's own witness, that standing alongside the rail on which passed the train, nineteen hundred feet from the crossing, he saw and now describes the accident; then deceased, before he was on the north track, must have seen the train coming, when it was nineteen hundred feet distant, where Weaver stood and so plainly saw him. At that time, when it was nineteen hundred feet off, he was somewhere on the forty feet over which he drove to reach the south-bound track, and at any one foot of the forty was safe if he stopped. Why did he drive on, into great peril? The only reasonable theory on which to account for the unfortunate man's conduct is the one which explains many such disasters ; ten, fifteen, twenty, or perhaps forty feet from the track, he saw the approaching train; it was then apparently a long distance off; as to a vehicle of like speed as his own, would really have been so ; he supposed he could easily clear the crossing before the train reached it; in this he miscalculated, for the train ran nineteen hundred feet while he moved less than forty, and he thus lost his life. The law calls this negligence, and will not permit a jury to call it something else ; will not permit them to say that it is care according to the circumstances, for a man to drive in front of a locomotive which he sees, even if he is ignorant of its speed as compared with that of a two-horse wagon.

The case here, on the facts, is not distinguishable from Myers v. Railroad Co., 150 Pa. 386, and Urias v. Railroad Co., 152 Pa. 326, except that the contributory negligence of the injured party, is, if possible, here clearer than in either of those cases.

The judgment is affirmed, and the appeal dismissed.