## Cromley, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Railroads—Crossings—" Stop, look and listen."*

Where a person approaching a grade crossing of a railroad, stops, looks and listens, at a place near the tracks from which he could obtain a view of them, the questions whether he should have stopped at another and better place, or have stopped longer, or have stopped again, are for the jury.

In an action against a railroad company to recover damages for death of plaintiff's husband, it appeared that plaintiff approached a grade crossing driving a sled. He stopped at what was apparently the proper place to stop, from which place he could have seen the train that struck them, if it had been within 500 feet of the crossing. He drove on at a walk, his view of the tracks extending as he advanced, and was struck on the nearest track after he had gone twenty or thirty feet. The condition of the street at the side of the tracks made the passage of the sled difficult and the horses reared an instant before the collision. *Held,* that the question of the deceased's contributory negligence was for the jury.

Argued Feb. 29, 1904. Appeal, No. 29, Jan. T., 1904, by plaintiff, from order of C. P. Montour Co., Sept. T., 1902, No. 58, refusing to take off nonsuit in case of Sarah C. Cromley v. Pennsylvania Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband and son. Before LITTLE, P. J.

The circumstances of the accident are detailed in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Edward Sayre Gearhart* and *James Scarlet*, with them *William J. Baldy*, for appellant.—Whether or not Cromley stopped at the usual and proper place was a fact for the sole determination of the jury: Elston v. Delaware, etc., R. R. Co., 196 Pa. 595 ; Lake Shore, etc., R. R. Co. v. Frantz, 127 Pa. 297 ; Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506 ; Whitman v. Penna. R. R. Co., 156 Pa. 175 ; Roberts v. D. & H. Canal Co., 177 Pa. 183 ; Arnold v. P. & R. R. R. Co., 161 Pa. 1.

*H. M. Hinckley*, with him *I. X. Grier*, for appellee.

OPINION BY MR. JUSTICE FELL, March 14, 1904:

The plaintiff's husband and her son, five years of age, were killed by an express train at a diagonal grade crossing in the borough of Watsontown. The train was running south on the westernmost of the three tracks of the defendant's road. The deceased were riding in a sled drawn by two horses on the main street of the borough and going in an easterly direction. As they approached the crossing at an acute angle they had a clear view of the track south for a distance of 1,800 feet. The view to the north was obstructed by dwellings and the station house until a point near the tracks was reached. At twenty feet from the tracks there was a clear view north, in the direction from which the train came, for the distance of about 500 feet. This view was enlarged as the tracks were approached, and at a point close to them it was extended to 3,500 feet, and on them to a mile or more. The train was running rapidly, probably fifty or sixty miles an hour, and was on the track nearest the horses. It struck the front part of the sled.

There was only one witness to what occurred before the horses reached the crossing. He was standing on a bank near the tracks north of the crossing, and testified that he saw the horses stop when within "twenty or ten feet" of the tracks, and then go on, and he saw them rear just before the engine reached the crossing. The stop was only for an instant, and was thus described by the witness, "It was a stop and a start, the team stopped and started." There was evidence that the train was to some extent enveloped in a cloud of dust and snow, and in the argument stress is laid on this fact as proof of a condition that interfered with a view of the train. This is of slight importance, however, because it was not shown that loose snow was thrown by the pilot so as to obstruct a view of the train. Dust and snow and loose papers were drawn to the track and whirled about, but not to a greater extent than is usual in the case of fast trains, and they obscured a side view only. The only witness who had a front view of the engine was north of the crossing, and saw the train when it was 2,800 feet north of his position, and he observed the accident 1,100

feet south of where he stood and through whatever dust and snow enveloped the train saw the horses walk on the track and rear just before they were struck by the engine. The street at the side of the tracks was muddy and gravel and cinders were mixed with the snow, making the passage of a sled over it more difficult than it otherwise would have been. There was evidence that the whistle was blown when the engine was 3,000 feet from the crossing, and only negative evidence that it was not blown afterwards. If there was any negligence on the part of the defendant shown it was in the failure to give warning of the approach of the train that was adequate in view of the exceptional danger of the situation. A nonsuit was entered on the ground of contributory negligence.

The facts to be considered are these: The plaintiff's husband stopped for a moment at what was apparently the proper place to stop, from which place he could have seen the train if it had been within 500 feet of the crossing. He drove on at a walk, his view of the tracks extending as he advanced, and was struck on the nearest track after he had gone twenty or thirty feet. The condition of the street at the side of the tracks made the passage of a sled difficult and the horses reared an instant before the collision. These facts give rise to two questions; did he comply with the rule of law that one about to cross a railroad track must stop, look and listen; if he did this, did he go on in the face of a manifest danger that he saw or should have seen?

The first question is readily resolved in favor of the appellant. In the absence of all evidence on the subject, the presumption is that he stopped, looked and listened. The testimony shows that he did stop at the first place near the tracks from which he could obtain a view of them, and the presumption is that he looked and listened. The act of stopping shows that he was exercising care, and whether he should have stopped at another and better place or have stopped longer or have stopped again, were questions for the jury: Ely v. Pittsburg, etc., Railway Co., 158 Pa. 233.

The second question is not so free from doubt, but the principles applicable to it are well defined. If the appellant's husband saw the train or should have seen it, there could be no doubt of his negligence, because he either went on in the pres-

ence of an obvious danger, or failed to observe the danger when he had an opportunity to do so. In either event he was negligent. But the rule stated in Carroll v. Penna. Railroad Co., 12 W. N. C. 348, and the long line of decisions that have followed it, is in its nature applicable only to clear cases, and if there is a reasonable doubt as to the facts or the inferences to be drawn from them the case must go to the jury: McNeal v. Pittsburg, etc., Ry. Co., 131 Pa. 184; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213; Doud v. Delaware, etc., R. R. Co., 203 Pa. 227. In this case it cannot be said that the driver saw the train or should have seen it, because it may have come into view in the 500 feet to which his line of vision was at first limited, after he had looked and started to cross. It was probably moving twenty times as fast as he was and after coming into view would cover the distance to the crossing before he could reach a place of safety. Nor can it be said by the court that he was negligent in not seeing and avoiding the train if it came into his view after he had started on. True, it was his duty to continue to look as he approached the track, but he may have been delayed by the condition of the crossing and by the rearing of his horses. Allowance must be made for these facts and for his bewilderment of mind if when committed to the act of crossing he was suddenly confronted with an unexpected and alarming danger.

In Gangawer v. P. & R. Railroad Co., 168 Pa. 265, relied on by the appellee, it was undisputed that the driver of the team could have seen the train and stopped in safety if he had looked when within fifteen or twenty feet of the track, and this distinction will be found in all cases that have been decided on the principles stated in Carroll v. Penna. Railroad Co., supra. The question in Kinter v. Penna. Railroad Co., 204 Pa. 497, was the adequate performance of the duty to stop, look and listen by one who stopped where because of an obstruction he could see only 240 feet of the track, when by going forward to within five feet of the track he could have seen half a mile and would have observed the coming train.

The judgment is reversed with a procedendo.