F. L. HINES, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

RAILROADS:  Accidents at Crossings—Issue as to Signals.  Testimony
1   to the effect that a party was in a mental attitude to hear the
required crossing signals and did *not* hear them, met by positive
testimony that such signals *were* given, presents a jury question
on the issue whether such signals were given.

RAILROADS:  Accidents at Crossings—Absence of Flagman.  Ordinary
2   care may demand the presence of a flagman at a crossing, though
not required by an ordinance.

EVIDENCE:  Opinion Evidence—Speed of Train.  Assuming some fair
3.  competency on the part of a witness to testify to the speed of a
moving object, the weight of the testimony rests with the jury.

RAILROADS:  Negligence—Looking and Listening.  The court will
4   not, ordinarily, declare a traveler negligent *per se* because he failed,
in approaching an obscured crossing, to look for an approaching
train at any *particular* spot or place.

*Appeal from Winneshiek District Court.*—W. J. SPRINGER,
Judge.

JUNE 22, 1923.

ACTION at law to recover damages on account of personal
injuries received in a collision between an auto truck driven

by plaintiff and a train operated by the defendant. Trial to a jury, and a verdict was returned in the sum of $2,000. Judgment was entered. Defendant appeals.—*Affirmed.*

*Hughes, Taylor & O'Brien* and *Frank Sayre,* for appellant.

*E. R. Acres* and *Goheen & Goheen,* for appellee.

De Graff, J.—On August 8, 1921 plaintiff F. L. Hines was injured as a result of a collision between defendant's train and an auto truck driven by the plaintiff. This action seeks to recover consequent damages. The specific allegations of negligence are: (1) that the train was operated at a high and dangerous rate of speed over the crossing on which the accident happened (2) that no flagman or other person was stationed at the crossing nor was any appliance used to warn persons about to cross the track of the approach of a train (3) that no bell was rung or whistle sounded to warn the plaintiff of the approach of the train in question. Plaintiff also pleaded his freedom from contributory negligence.

Upon the conclusion of the testimony the court overruled defendant's motion for a directed verdict and submitted the cause to the jury for determination.

Two primary questions are involved on this appeal:

1. The sufficiency of the evidence to carry the specific allegations of negligence to the jury.

2. The freedom from negligence of plaintiff proximately contributing to his injury.

We will first briefly recite the record evidence. The accident happened about 9:20 A. M. It was a bright, clear, still morning. The train consisted of an engine, combination baggage and passenger coach, and a day coach. It had just left Decorah for Conover, Iowa. It is a single track railroad. The collision happened on what is known as the Main Street crossing.

Main Street runs east and west, and the railway track runs southwesterly from the Decorah depot which is located on Water Street one block north of Main Street.

On the morning in question the train started from the depot and at that time the engine was on the north street line of Water Street. The distance between Water Street and Main

Street along the line of the defendant's track is about 337½ feet. The depot is located about 520 feet from the Main Street crossing.

Facing south on Main Street and on the westerly side of the right of way is a frame garage building 17 feet high and 30 feet wide. From the southeast corner of the garage to the west rail of the track is 7¼ feet and extending from the southeast corner of the building westerly on the right of way for some distance there is a board fence 10 2/3 feet high. Other buildings and structures are located west of the track between the depot and the Main Street crossing so that under the existing conditions a person driving east on Main Street toward the railroad crossing would have his view seriously obstructed until he was nearly to the track.

Plaintiff was driving east on Main Street immediately prior to the collision. He was well acquainted with the surroundings and had lived on Main Street about one block east of the crossing for 4 years preceding the accident. He was also acquainted with the operation of the defendant's train. He was an experienced truck driver having been engaged in his present employment about 4 years and having driven a truck or automobile for more than 12 years. He had crossed the track at the place of the accident many times.

Just prior to the accident plaintiff was driving about 6 miles an hour. He had his car under control and testified that he was able to stop it in about 6 feet. He further testified: "On account of the fence at the corner of the garage, you would have to be within 15 feet of the track before you could look down the track toward where the engine was coming, and from there you could see 60 feet down the track."

Measurements taken by a civil engineer and introduced by defendant corroborate this statement. "From a point 10 feet from the west rail we could see the Water Street crossing; from a point 11 feet away, we could see up the track 138½ feet; from a point 12 feet away, we could see up the track a distance of 96 feet 9 inches; from a point 13 feet away, we could see up the track 78 feet and 3 inches; from a point 14 feet away, we could see up the track 64 feet 4 inches; from a point 15 feet away, we could see a distance of 58 feet 4 inches; at a

point 16 feet away, we could see a distance of 51 feet 4 inches.''

Plaintiff's testimony as to the speed of the train discloses 12 to 15 miles an hour and on the part of the defendant from 5 to 6 miles an hour. One witness offered on behalf of the defendant estimated the speed of the truck immediately prior to the accident at 10 to 12 miles per hour. Plaintiff's truck was about half way across the track when he first saw the engine. It was then from 4 to 6 feet from him. ''It struck me in the middle of my car. About the time I discovered the train was about the same time I was hit—just a second's difference. I was on the railroad tracks before I discovered the train at all.''

He further testified: ''On this particular morning, I looked both ways, and paid as much attention to trains as anybody could that would be driving a truck; but this particular train I thought had gone, as it was past train time. I was not expecting a train at that time. I kept looking until I got within 15 feet of the track, then put my mind on the truck and started across. * * * As I approached this crossing, I looked in both directions for a train, and I was thinking about trains as I approached this crossing.''

It also appears that an auto was driving in the same direction and toward the crossing immediately prior to the collision. Plaintiff testifies: ''The other car was possibly about 15 feet ahead of me at the approach of the crossing. The car speeded up a little after it went on the crossing and was about 50 feet ahead of me when I got on the crossing.'' The engine carried the truck between 40 and 50 feet from the point of the collision. With these facts in mind we will now note the propositions relied upon by appellant for reversal.

I.   Was there a conflict in the evidence that justified the submission of the allegation of negligence predicated on the failure to give the usual and customary warnings on the approach of the train to the crossing? If the evidence of the defendant in this particular is not in conflict then it was error to submit this question to the jury.

1. RAILROADS: accidents at crossings: issue as to signals.

But two witnesses testified for the plaintiff on this subject,—plaintiff and witness Marcy. It is contended that their evidence is purely negative in character. In this connection

it may be noted that several witnesses testify on behalf of the defendant that the whistle was blown and the bell was rung and rung continuously that morning.

If a witness simply says "I didn't hear a bell or whistle," and the record discloses that he was not in a position or in a mental condition to hear, then it may be said that his testimony is purely negative. Testimony of this character must necessarily be derived from knowledge through the medium of the senses and it must be such knowledge as enables the witness to speak affirmatively against the existence of the fact.

Plaintiff testified definitely that he listened. "I was paying close attention that forenoon for the whistle,—not more for the whistle than other indications of the train. I was paying close attention for the bell that morning."

Marcy's testimony was less definite, but he was in a position to hear subject to the same limitations as governed the plaintiff.

Marcy was standing in the doorway of the garage facing south on Main Street and was looking at Hines as he proceeded with his truck toward the track. He testified: "I had my mind directly centered down on the truck itself, watching him drive across there."

In *Hoffard v. Illinois Cent. R. Co.* 138 Iowa 543 it is said that the witnesses who testified they did not hear the engine signals were not in a situation to hear or were not noticing for the purpose of hearing the signal. It was held that such evidence was purely negative and did not create a conflict with positive evidence that the signals were given.

The instant testimony, however, cannot be classified as merely negative. It had some probative value. *Brose v. Chicago G. W. R. Co.* 185 Iowa 867. Under the circumstances of the case at bar a trial court is not privileged to ignore such testimony and hold that it is not entitled to any weight. *Morgan v. Iowa Cent. R. Co.* 151 Iowa 211.

II. Did the court err in submitting to the jury the allegation of negligence involving the failure to have a flagman at the crossing in question? No ordinance is involved, nor does the record show that a flagman was regularly employed. It is shown that the

2. RAILROADS: accidents at crossings: absence of flagman.

angle at which the crossing is made by the tracks is quite acute. The vision of a person in approaching the crossing from the east is seriously obstructed. It is truly a dangerous crossing. It appears that on different occasions the railroad assumed a duty of having a flagman present, and this was a recognition that the crossing was dangerous by reason of conditions surrounding. Plaintiff had observed a trainman or flagman at this crossing at different times.

After plaintiff looked to the northeast at the 15-foot point he testified that he then looked ahead. "I was looking to see whether there was a flagman or not." He also testified: "Before this accident, I passed that crossing several times when there was a man standing there, and had been stopped by the flagman, who, I suppose, was one of the brakemen."

Under all the circumstances it was for the jury to say whether ordinary care reasonably required the presence of a flagman and whether the plaintiff by reason of the conduct of the defendant in having a person stationed at the crossing on different occasions had the right on this particular morning to rely on the presence of a flagman to warn him of danger.

III. Error is predicated on the admission of the testimony of the plaintiff and another witness with reference to the speed of the train as it approached the crossing. The objection is

3. EVIDENCE: opinion evidence: speed of train.

primarily to the competency of the witness. Testimony as to speed is mere opinion under any circumstances, and the weight to be given such testimony depends upon his point of observation, the experience of the witness, his familiarity with the movement of the object in question and other factors. The objection goes to the weight rather than the admissibility of the evidence. *Watson v. Boone Elec. Co.*, 163 Iowa 316. We are not inclined to hold this matter reversible error.

IV. One other question is presented by appellant. It is the eternal question in cases of this character. Was the plaintiff guilty of contributory negligence proximately causing his injury?

4. RAILROADS: negligence: looking and listening.

We have frequently said that a plaintiff in personal injury actions is not guilty of negligence as a matter of law because he did not look or listen at

any particular point to discover an approaching train before entering a zone of danger. It is his duty to be vigilant and to exercise that degree of care and caution which the reasonably prudent person would exercise under the circumstances and this question ordinarily is one for the jury.

Having looked and listened within a reasonable distance of a dangerous crossing, whether he should have looked or listened again at some other point or place is ordinarily for the jury to decide, and it is not for the court to say as a matter of law in the instant case that the failure to look twice or any number of times in any direction makes him guilty of contributory negligence. We cannot hold under the mathematics of the case that when the plaintiff looked, as he testified, the train must have been in his line of vision, and therefore he did not look at the particular time and place claimed by him.

The physical-fact rule is not a valuable first aid to the present appellant. The distance and the time involved are matters of comparatively a few feet and a few seconds respectively. Under the evidence the jury could find that the train was moving from two to three times as fast as the truck. At a particular moment the train would not have been within the line of vision of a person approaching the crossing from the west and in the next second or fraction thereof it could have been seen.

No two cases are quite parallel on their facts and it is idle to attempt to reconcile decisions involving this proposition. In this case the jury was entitled to consider whether the plaintiff was reasonably justified in looking to see if a flagman was on the crossing, and also the circumstances that an auto was immediately ahead of him and about to cross the tracks. These facts do not excuse plaintiff from the duty of exercising reasonable care, but are to be considered in determining his freedom from negligence. The plaintiff had his car under control, and in determining his negligence we cannot altogether divorce the evidence tending to support the specifications of defendant's negligence from the facts and circumstances upon which the negligence of plaintiff is based. No hard and fast rule can be adopted. The circumstances must govern.

Some emphasis is placed by appellant on the testimony of

the plaintiff that the latter "was not looking for a train" when the truck approached the crossing. There is a little confusion and apparent conflict in the statements of the plaintiff. There was but one morning train on the Milwaukee at the time in question, and it is clear that plaintiff thought this train had gone. Nevertheless plaintiff was under a legal obligation to exercise reasonable care, and his testimony stated negatively is to the effect (at least the jury could so find) not that he didn't look, but when he looked he was not expecting this particular train, or any train.

In order that we may say that a plaintiff is guilty of negligence as a matter of law his negligence must be so palpable that reasonable minds could not differ in the conclusion that he was negligent. We are satisfied that the trial court properly submitted the question to the jury. The judgment entered is—*Affirmed.* .

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.