## TEXAS & P. RY. CO. v. WHITE.
### No. 4075.

Court of Civil Appeals of Texas. Texarkana. Nov. 3, 1931.

Rehearing Denied Nov. 19, 1931.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Crumpton & Crumpton and Wm. Hodges, all of Texarkana, for appellee.

SELLERS, J.

This suit was instituted by Claude White in district court, Bowie county, against the Texas & Pacific Railway Company to recover damages for personal injuries to himself occasioned by a collision between one of defendant's passenger trains and a one-ton Ford truck operated by plaintiff. The collision occurred near Queen City, in Cass county, Tex., March 18, 1930. Plaintiff alleged a number of grounds of negligence, but in view of the disposition to be made of this appeal, we deem it unnecessary to discuss but one, and that is the failure of appellant to blow the whistle for the crossing as required by law. The defendant pleaded contributory negligence as follows:

"(a) He failed to stop the truck which he was driving before going upon said defendant's track, and failed to look or to listen for the approach of the defendant's train to said crossing.

"(b) He failed, before going upon said crossing, to stop the truck which he was operating, at a place where he could see or hear the approach of defendant's train to said crossing.

"(c) He failed, before driving the truck upon defendant's track, to look for the approach of defendant's train to such crossing.

"(d) He failed, before driving the truck upon defendant's track, sufficiently to look for the approach of defendant's train thereto.

"(e) He failed, before driving the truck which he was operating upon defendant's track to listen for the approach of defendant's train to said crossing.

"(f) He failed, before driving said truck upon said track, sufficiently to listen for the approach of defendant's train to such crossing.

"(g) He failed, before driving said truck upon said track, to take any precautions to discover the approach of defendant's train to said crossing.

"(h) He failed, before driving said truck upon defendant's track at said crossing, to take reasonable and necessary precautions to discover the approach of defendant's train to said crossing.

"(i) If the plaintiff's vision on or along defendant's track, in the direction from which its train approached said crossing, was from any cause obscured, the fact of such obscuration was well known by and perfectly obvious to the plaintiff, and by the use of reasonable precautions he, notwithstanding such obstruction, could have become advised of the near approach of such train to said crossing, in time to have avoided any injury therefrom, and that he then and there failed to take or use such precautions, or any precautions.

"The defendant further shows that when the plaintiff drove said truck upon its track at said crossing, its train was nearly approaching the same, and that had he not been guilty of the acts and derelictions hereinabove specified, he could and would have seen said train in time to prevent the happening of the accident in which he was injured, and could have avoided the same, and that the acts and derelictions hereinabove charged constituted negligence on his part, which caused and contributed to cause the injuries which he sustained, and on this account, the plaintiff cannot recover herein, and the defendant prays that it go hence without day, fully discharged, and it will ever pray."

The court submitted the case to the jury upon special issues, and after defining negligence and proximate cause, the issues submitted by the court, as far as here concerned, are as follows:

"Do you find from a preponderance of the evidence that defendant's employees in charge of said train failed to blow the whistle at least eighty rods from the crossing while approaching said crossing?" Answer: "Yes."

"Was such failure, if any, to blow the whistle at said distance from the crossing, a proximate cause of the collision?" Answer: "Yes."

"Was the plaintiff guilty of contributory negligence and his failure to stop, look, and listen, or in his failure to look, or in his failure to listen, for the approach of trains, while going from the ditch up the approach and onto defendant's railroad track?" Answer: "No."

"To aid you in answering the last above question, No. 15, you are instructed that by contributory negligence is meant such negli-

gence on the part of the plaintiff as causes, or contributes to cause, the collision."

The court entered judgment for the plaintiff for the amount of damages assessed by the jury, to wit, $7,500, and from which judgment the defendant has prosecuted this appeal.

A fair statement of the conditions surrounding the scene of the collision is, in a general way, as follows:

The collision happened at what is known as Lanark crossing. The Texarkana and Atlantic Highway, which is a hard-surfaced road between the two towns, runs north and south, and this may be stated as the course of the highway at the scene of the collision. Appellant's railroad, for some distance before reaching the scene of the collision, going south, parallels the highway, their right of ways being adjacent. This Lanark crossing is on a community road leading to the east from the paved highway at right angles. The railroad track at Lanark crossing is on a dump some seven feet higher than the highway, and there is a shallow ditch between the railroad right of way and the highway, but the ditch is located entirely on the right of way of the highway. It is approximately sixty feet from this ditch to appellant's track at this crossing. This driveway up the dump to the crossing was smooth, but a little sandy. About ninety feet south of this crossing and about twenty-two feet west of the railroad track on appellant's right of way were four or five stacks of cross-ties, variously estimated to be between four and five feet high. These stacks of cross-ties paralleled the railroad track. Just a few yards south of this crossing, appellant's track begins to curve to the east and gradually slopes down into the valley, and when a train is at the whistling post south of this crossing, which is about eighty rods from the crossing, one standing on the highway at the approach to the crossing cannot see the train. The approach to this crossing from the highway is in the form of a wye, one leg of which serves traffic from the north and the other serves traffic from the south.

Appellee testified as follows: "Mr. Wood was with me. I had two mules in my truck for delivery. Those mules were loaded at Wendel Brothers' and were to be delivered to Mr. Wood at Cass, Cass County, Texas. On this trip I drove on the Shreveport highway into Cass County (the Texarkana and Atlanta road). I drove about sixteen miles on the Shreveport highway. * * * In order to get to Cass it was necessary to leave the Shreveport highway at Lanark crossing on the Courtland road. * * * I was driving the truck. When I got to the point of the intersection of the Courtland road and the Lanark crossing on the Shreveport highway, I drove onto the left hand side of the approach of the crossing, and stopped, and looked, and listened for a train. I looked both ways, north and south. I did not see a train and I did not hear a train. It was such a ditch there that I could not cross at that place. I had to back up the highway. That approach was leading on to the crossing from the north as you approach from the north, I mean that I pulled into this crossing right here (indicating), I stopped, looked and listened for a train. I could not see or hear one, and there was such a ditch there that I could not make it across. I backed up the highway and came up to this crossing here (indicating). Backed my truck around west into the Courtland road. Yes, across the Shreveport highway on the west side. I backed into the Courtland road on the west side of the Shreveport highway. I tried to approach the crossing leading to the south there. After backing into the Courtland road across the highway it was necessary for me to change gears. I did change gears, changed to second gear. I also looked both ways up the highway for automobiles. I pulled down across the highway, cleared the highway, stopped, looked, and listened for a train, and put my car back in low gear and pulled on up. I was driving a T model Ford truck. I said that I stopped, looked and listened then I put it in low gear and went on up. I stated that I pulled that crossing in low gear. The surface dirt at that crossing there was mostly sand. The approach at that crossing was pretty steep. * * * When I got to the top of that crossing, it appeared to me that a dark something just covered me up and that is all that I know. Previous to pulling up to the crossing when I was looking for a train, I noticed some piles of cross-ties on the right-of-way between me and the railroad."

On cross-examination the witness said: "I said that when I got to the Lanark crossing I started to turn upon it and I looked for a train, that was when I was down at the ditch. * * * I looked up and down the road for automobiles and started again, I stopped then, and that is when I looked and listened. There were some cross-ties there that obstructed my view down the track. I could not see down the track well. When I looked, I then put my car in low gear and went on up. I went up slowly. You ask me if I did anything else except drive on slowly, I had all the trouble I could have getting up there. I did not stop the truck and look anywhere else along there. I did not look any more after leaving the ditch for the train. I could not see any farther, could not see the track. I was on the north side of the truck as I went up to the railroad in the driver's seat. In going up there my attention was on my driving. I did not look any more or stop and listen any more for a train."

Mrs. Hill, a witness for appellee, testified: "Mr. White and Mr. W. B. Wood were the

men that stopped. I was acquainted with Mr. Wood at the time. I tell the jury that they stopped before going on to the crossing and looked into every direction. They then started up the dump of the crossing and just as the two wheels of the car hit the track the train blew, and it blew again just after it hit. The train wasn't over fifty yards from the crossing when it first blew. It blew once for it and then blew again and then it hit the truck. You could not snap your fingers more than three times between the time the train first blew, fifty yards from the truck until it hit it. The train did not blow except the two times. I had not heard the train blow previous to those two times. I know where the whistling post is. I could not say how far it is from the Lanark crossing. It is down there in the valley. The train did not blow at that whistling post that day. On the elevation on which my house is situated it is possible for me to see a train coming down grade from Queen City."

Appellant insists that the trial court erred when it refused to instruct the jury to return a verdict in its favor after being requested to do so by appellant for the reason that under the evidence appellee was guilty of contributory negligence as a matter of law.

■ We are unable to agree with appellant on this assignment. There are a number of adjudicated cases in Texas on this question, in some of which, as we view it, the facts are much stronger than they are in this case, and in all of the recent cases it has been held that the question of contributory negligence should be submitted to the jury. Texas & Pacific Ry. v. Ray (Tex. Civ. App.) 287 S. W. 91, 92, and the authorities there cited. We shall not discuss the question further, but deem it sufficient to quote from the Ray Case, supra:

"Appellant's contention under this assignment is that Plangman and the deceased failed in the exercise of due care for their own safety, in that it did not appear that they looked or listened at a time and place when, by looking and listening, they would have discovered the approaching train in time to have avoided the injury, and that such failure on their part constituted negligence as a matter of law.

"The evidence shows very satisfactorily that Plangman and the deceased knew they were approaching the crossing and appreciated the necessity for looking and listening for an approaching train. A half mile west of the crossing the subject was discussed by them and thereafter until they reached a point about 100 yards west of the crossing they looked and listened repeatedly. There is no evidence, however, that they either looked or listened within the last 100 yards as they approached the crossing.

"Appellant's argument is that it is not every 'looking' and 'listening' that will meet the requirements of the law and relieve one from negligence; that to look and listen when a train could neither be seen nor heard, and fail to look and listen at a time and place when its approach would be discovered, and the injury avoided, is not the exercise of such care as the law contemplates. Appellant's contention in this respect, however correct as a statement of the law, ignores completely the right of the jury to find from the evidence that as Plangman and deceased exercised commendable care by looking and listening to a point about 100 yards of the crossing, and, neither seeing nor hearing a train approaching, and as no signal heralding the approaching train was given, they could assume that there was no train approaching within the statutory signaling distance, and hence could safely proceed without further looking or listening, and, in so doing, were in the exercise of due care. The question was, in our opinion, essentially one of fact for the jury and not of law for the court."

Appellant complains of the issue of contributory negligence as submitted by the court in that it groups in one issue a number of acts and derelictions separately pleaded by the appellant as constituting contributory negligence on the part of appellee, and which acts were either admitted or proved.

■ It will be noted that the court in submitting the issue of contributory negligence assumed, as we view it, in appellant's favor, that appellee did not stop and look and listen, or stop and look or listen after he left the ditch in going on to the crossing. These facts having been assumed by the court, the only ultimate fact-question submitted to the jury in said issue was whether appellee was guilty of contributory negligence. The definition given of contributory negligence in connection with said issue made it impossible, we think, for the jury to have misunderstood the meaning of the issue they were called upon to answer. The assignment is therefore overruled.

Appellee insists that if the issue on contributory negligence was incorrectly submitted by the court, appellants could not be heard to complain for the reason that the special issues requested by it were incorrect and not entitled to be given by the court.

It may be that said issues are subject to some of the criticisms announced by Judge Speer in the case of Freeman v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607, but the view we have taken of the issue as submitted by the court makes a discussion of this question unnecessary.

■ There is, in our opinion, an abundance of conflicting evidence in the record on the issues of negligence in failing to blow the whistle and as to such failure being the proximate cause of the injury, and we therefore overrule the contention that the evidence on

those issues is insufficient to support the jury's findings.

There are other assignments of error, but the disposition made of those discussed make it unnecessary to pass upon the remaining ones.

Finding no error in the judgment of the trial court, the judgment is affirmed.