(No. 6160. April 20, 1935.)

E. S. JUDD, Jr., and MARY J. JUDD, Husband and Wife, Respondents, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, and WM. E. CLINKING-BEARD, Appellants.

[44 Pac. (2d) 291.]

462

H. B. Thompson and Geo. H. Smith, for Appellants.

464

A. F. James, for Respondents.

AILSHIE, J.—This action was brought by respondents against the appellant railroad company and one of the company's engineers to recover damages for the death of respondents' minor child and serious injuries to respondent E. S. Judd, Jr., arising as the result of a railroad crossing accident. Since E. S. Judd, Jr., was the active party to whose conduct reference will be frequently made, we will refer to him as "respondent." The jury returned a verdict against the railroad company for $15,720 and against the engineer in the sum of $1; judgment was entered on the verdicts. An order was also entered by the lower court denying appellant's motion for judgment notwithstanding the verdict. From the judgment and order the railroad company appealed.

The accident occurred at a point about three-quarters of a mile east of the town of Bliss, during the early evening of July 20, 1932. Respondent drove out from Bliss to the home of one Laughridge, a mechanic, to inform him of some repair work to be done on a car at Bliss. Respondent was not familiar with the road leading to the Laughridge place, never having driven over it. This road had been used by the public generally for a period of about twenty years, being the only road by which people could travel to and from the Laughridge place. One witness testified that an average of from one to five cars passed over this road daily. The evidence also showed that in order to get out of the lane leading from the road to Laughridge's yard, it was both customary and necessary to back out.

After delivering the message to Laughridge, respondent backed out and up the grade toward the crossing. This road had been used so much by people traveling over it that there was a well-beaten single track. Respondent backed out the right-of-way gate about sixty feet, then turned the rear of the car east and backed easterly about twenty or thirty feet. "I stopped and kept my foot on the brake . . . . took the lever out of reverse and I listened and turned and looked around clear back through the rear glass and I

couldn't see nothing. . . . . I looked east and west; I looked both directions." He then turned and drove his car in a southwesterly direction toward the crossing. A lone engine was approaching this crossing from the east at a distance of approximately 250 or 300 yards. Both the engine and the automobile were then so situated that each was in view of any person sitting in the other. It seems, however, that at the time respondent looked, his view of the engine was cut off by either that part of the body of the car between the two side windows or by the part between the rear east side window and the rear window. The engine was approaching quietly at a speed of from 25 to 30 miles an hour; there is a conflict of evidence as to whether the whistle was blown or bell was rung. There is also a conflict of evidence as to whether the engineer or anyone else was in the lookout or even in view; and as to whether the brakes were applied prior to the crash at the crossing.

After respondent had stopped, looked and listened he shifted to low gear, and started up the steep grade at a rate of about five miles per hour. He then noticed, for the first time, that the automobile road on the other side of the crossing was not visible; he also noted the narrow steep driving lane and directed all of his attention to driving up through this lane, watching for a car from the south, and in getting over the crossing. He crossed the track and as the rear wheels of his automobile were leaving the south rail of the track, the engine crashed into the rear of his car. The engine continued at the same speed for a distance of about 100 yards. The car was demolished and dragged about 50 feet beyond the crossing. Respondent was taken from the wreckage of the car and his minor child was picked up about 100 feet beyond the crossing. The child later died from the effect of her injuries and respondent is crippled for life.

The first assigned error argued in appellant's brief is directed against the ruling of the court in permitting the plaintiff's witness Huff to testify to a statement made by the engineer, Clinkingbeard, just shortly after the collision. This witness was about forty rods away and saw the acci-

dent, and immediately went to the place of the accident, and he says the engineer "was perspiring violently and his speech seemed to be almost incoherent." The witness testified:

"He (the engineer) said that he did not know how it happened; that he did not understand how it happened. He said it seemed to be his unlucky day and that he had had two other crashes previously."

The testimony of the witness Huff relating to the statement made by the engineer immediately after the happening of the accident was a part of the *res gestae* and admissible under the rule governing *res gestae* statements. It appears to have been made very soon after the happening of the accident and while the engineer was still unnerved and shocked by the accident. (*Coffin v. Bradbury*, 3 Ida. 770 (784), 35 Pac. 715, 95 Am. St. 37; *Wilson v. St. Joe Boom Co.*, 34 Ida. 253, 264, 200 Pac. 884.) It was also admissible in the case against the engineer as an admission or statement against interest.

■ It was admissible against the railroad company on the ground that it was a part of the *res gestae*. If this were not true its admission would still not be a prejudicial error against the railroad company for the reason that it was admissible against the engineer, and the company failed to move the court to withdraw from the jury the testimony as to the railroad company. (*St. Louis etc. R. Co. v. Raines*, 90 Ark. 482, 119 S. W. 266, 267; *Union Nat. Bank of Wichita v. Kramer*, 121 Kan. 180, 246 Pac. 976, at 978; *Obermeier v. Mortgage Co.*, 123 Or. 469, 259 Pac. 1064, 1067, 260 Pac. 1099, 262 Pac. 261; *Taylor v. Deverell*, 43 Kan. 469, 23 Pac. 628 (3); 3 C. J., p. 823, note 31.)

■■ The testimony of Huff as to what the engineer had said was not given for the purpose of contradicting the engineer, as the latter had not testified in the case at that time. It was not introduced as impeaching testimony. In connection with the consideration of this evidence, appellant

insists that Instruction No. 27 given by the court was erroneous and prejudicial. The instruction is as follows:

"The credit of a witness may be impeached by proof that he or she has made statements out of court contrary to what he or she has testified on the trial. If you believe from the evidence that any witness has made statements out of court at variance with the testimony given in this case, regarding any material matter testified to by such witness, then the jury can totally disregard the testimony of such witness so impeached, making such contradictory statement or statements, except in so far as you find it is corroborated by other and credible evidence, or by circumstances introduced in evidence in the case."

In support of the contention that this was erroneous we are cited to *State v. Boyles,* 34 Ida. 283, 200 Pac. 125, wherein the court was considering a requested instruction on the impeachment of a witness by showing that he had testified falsely on some material issue. In this respect it is evident that appellant confuses two different rules of law on impeachment of a witness: (1) The impeachment by showing *contrary statements made out of court* as authorized by sec. 16–1210, I. C. A.; and (2) by showing that the witness has *wilfully testified falsely* to some material fact. The court covered the latter clearly by his Instruction No. 26, reading as follows:

"If you believe that any witness on either side of this case has wilfully testified falsely on any material matter, then you have the right to disregard the entire testimony of such witness, except in so far as you find it corroborated by other reliable witnesses or evidence."

Instruction No. 27 above quoted is in harmony with sec. 16–1210, I. C. A., which provides that:

"A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present," etc.

As said by this court in *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860: This statute "for impeachment by showing statements by a witness contrary to his testimony does not require that the contrary statements shall be shown to be false."

Appellant complains of the action of the trial court in refusing to give its requested Instruction No. 17 on the last clear chance rule or to withdraw that issue from the jury. The requested instruction was erroneous and was properly denied. Among other things the complaint contained the following allegation:

"While the plaintiff E. S. Judd, Jr., was unable to extricate himself from said position of peril, the said employees of said defendant company, in charge of said engine, if they had maintained a lookout on said engine or if any one of said employees had been looking to see whether or not said crossing was clear, would have had sufficient time to and could have applied said brakes or have otherwise slackened the speed of said engine so as to avoid striking the said automobile, and if the said employees of said company in charge of said engine, had, at and immediately prior to the time of said collision, exercised ordinary care with the means at their command, they could and would have avoided said collision, and the resulting serious injury of plaintiff E. S. Judd, Jr., and the death of the said Dorothy Judd, hereinafter set forth."

This allegation was sufficient to present the last clear chance issue. (*Branson v. Northern Pac. Ry. Co., ante,* p. 220, 41 Pac. (2d) 629, decided at the present term and cases there cited.) There was also sufficient evidence introduced to justify an instruction covering the last clear chance rule. The failure, however, of the court to give an instruction defining appellant's duties and liability to respondent under this rule of law could not, under the circumstances of this case, operate prejudicially to appellant. The only ones who could have suffered by the failure to give such an instruction were respondents. The last clear chance doctrine imposes added emergency duties upon a de-

fendant under special circumstances and tends to relieve the plaintiff of the penalty of his contributory negligence, and so a failure to instruct on that rule could not prejudice the defendant.

The engineer admitted that when his engine was some 300 feet east of the crossing he saw respondent approaching the track in his car. He also testifies that the bell was ringing constantly and that he sounded the whistle several times and applied the brakes. Other witnesses who saw the accident testified the whistle was not sounded and the bell was not rung and that the brakes were not applied until the engine had passed 100 yards below the crossing. The hind wheels of respondent's car were just leaving the south side of the track when the car was struck by the locomotive. Had the engine slowed down for an instant of time the accident would have been averted. It is contended by respondent that, had the brakes been actually applied immediately upon the discovery of respondent by the engineer, it would have slowed up the speed of the locomotive sufficiently to give respondent this extra instant and enable the car to clear the track. It is also contended that had the whistle or bell been sounded when the engineer discovered respondent's peril, he could have saved himself from the accident. As we view this evidence, it was sufficient, had the jury believed it, to support a verdict against appellant under the last clear chance doctrine, if a correct instruction on the subject had been requested and given. However, appellant suffered no prejudice for want of an instruction on this subject.

On the other hand, this evidence in connection with the other facts and circumstances of the case is sufficient to support the verdict on the theory of general negligence on the part of appellant. The issues of appellant's negligence and respondent's contributory negligence were submitted to the jury by appropriate instructions.

It was shown that appellant and its engineer and other employees at Bliss knew of this crossing and it had been used by appellant's employees in traveling back and forth

for many years; that appellant had maintained the crossing over its track, and that the approach to the crossing was steep and rough.

Errors have been assigned against the rulings of the court in overruling the demurrer to the complaint, denying motion for nonsuit and denial of motion for directed verdict, and motion for judgment notwithstanding the verdict. These assignments all involve, first, the sufficiency of the complaint, and secondly, sufficiency of the evidence to go to the jury and to support the verdict. We find no error in these several rulings. The cases relied on by appellant (*Testo v. Oregon-W. R. & N. Co.,* 34 Ida. 765, 203 Pac. 1065, *Smith v. Oregon Short Line R. Co.,* 47 Ida. 604, 277 Pac. 570, and *Polly v. Oregon Short Line R. Co.,* 51 Ida. 453, 6 Pac. (2d) 478), do not support its contention as applied to the facts of the present case. In the case at bar the approach of the train was wholly unknown to the respondent, and when he stopped his car and looked for the locomotive, its presence was obscured by that portion of the side of the automobile between the two windows; but this latter fact was evidently not observed by respondent although it was within his power to have discovered it. When he started his car forward for the purpose of crossing the track his attention, according to his testimony, was diverted from the railroad track by a series of conditions and circumstances which engaged his undivided attention,—(a) the driveway was a narrow one-track road with weeds grown up on each side; (b) the roadway was rough with depressions of approximately five feet on each side the track, with a rough and steep ascent, approximately five feet high, in crossing the track; and (c) the driver's attention centered on the road for discovery of an approaching car from the other side of the track where there was also a depression. For these reasons it was the duty of the trial court to submit to the jury the question as to whether or not respondent exercised due diligence in looking and listening for an approaching train.

 It is well established that a driver of an automobile, approaching a railway track, must look and listen for an approaching train before attempting to cross. (*Smith v. Oregon Short Line R. Co.*, 47 Ida. 604, 277 Pac. 570; *Pokora v. Wabash Ry. Co.*, 292 U. S. 98, 54 Sup. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049; *Young v. Pacific E. Ry. Co.*, 208 Cal. 568, 283 Pac. 61.) The question, however, often arises as to whether the driver of an automobile or other conveyance, who once actually stopped, looked and listened, did so at the proper time and place and within view of or in proper proximity to the railway track, or should stop again before driving onto the track. Such questions are issues for the jury. (*Graves v. Northern Pac. Ry. Co.*, 30 Ida. 542, 166 Pac. 571; *Branson v. Northern Pac. Ry. Co.*, ante, p. 220, 41 Pac. (2d) 629; *Pokora v. Wabash Ry. Co.*, supra; *Nichols v. Chicago, B. & Q. R. Co.*, 44 Colo. 501, 98 Pac. 808, at 813; *Galveston, H. & S. A. R. R. Co. v. Hubner*, (Tex. Civ. App.) 42 S. W. 1021; *Rice v. Erie R. Co.*, 271 Pa. 180, 114 Atl. 640; *Cromley v. Pa. Ry. Co.*, 208 Pa. 445, 57 Atl. 832 (1); *Hines v. Chicago, M. & St. P. Ry. Co.*, 196 Iowa, 109, 194 N. W. 188, 191; *Butterfield v. Chicago, R. I. & P. Ry. Co.*, 193 Iowa, 323, 185 N. W. 151, 153; 52 C. J., p. 490, sec. 2055.)

 *Texas & P. Ry. Co. v. White*, (Tex. Civ. App.) 44 S. W. (2d) 780, is a case similar in its facts to this case. There the motorist stopped, looked and listened and did not see or hear an approaching train and then started up and drove onto the track over a rather steep ascent without further looking for a train. The court of appeals held that the issue as to the contributory negligence of the motorist was a matter for the jury. We think it was peculiarly so in this case.

It is indisputable that Judd could have seen the approaching locomotive from the place where he stopped his car, looked and listened, had his vision not been obscured by the space between the windows of the car. The court cannot say, as a matter of law, that it was negligence on the part of Judd to not observe the locomotive or observe that his

vision had been obscured of a sector of the track and that he should have made another effort to obtain a vision of the entire track; or that he should have again looked or stopped his car before driving onto the track. These were proper issues for the jury to pass upon in considering and determining the issue as to the contributory negligence of the driver of the car.

To paraphrase the language of Justice Cardoza in *Pokora v. Wabash Ry. Co.*, 292 U. S. 98: Here the fact is not disputed that the plaintiff did stop before he started to cross the tracks. If we assume that by reason of the space between the car windows having obscured Judd's vision, there was a duty to *stop again* when the obstruction had changed or been cleared, that duty did not arise unless respondent knew or should have known of the obstruction and that it had been removed, and also that a stop could have been safely made after the point of clearance had been reached and discovered. (See, also, *Dobson v. St. Louis, S. F. R. Co.*, 223 Mo. App. 812, 10 S. W. (2d) 528.)

The rule requiring one about to cross a railroad track to keep a lookout for an approaching train, does not, and necessarily cannot, require the driver to keep his eyes constantly on *the railroad track*, as he must give some attention to his car and the road over which he is driving. In this respect appellant's requested Instructions 3 and 4 were not a fair statement of the driver's duty, in that it placed upon him a too rigid requirement which he could not observe and at the same time operate his automobile. (See cases above cited.)

Complaint is made of Instruction No. 28 given by the court, which is as follows:

''You are further instructed, Gentlemen of the Jury, that in assessing the damages in this case, you must not in assessing the same, reach the amount thereof by chance. That is to say—you cannot assess damages by adding the various amounts you may individually think should be awarded to the plaintiff, and reach the amount you decide to assess as

damages, by dividing such total sum by twelve, or any less of your number. Such a verdict is known in law as a quotient verdict, and is prohibited.''

This instruction standing alone would not be a proper instruction to give in a case of this kind where the evidence as to negligence is conflicting. The objectionable feature of this instruction is its apparent assumption that the verdict should be for the plaintiff. (64 C. J., p. 535, sec. 482, notes 81, 82; *Counts v. Thomas*, (Mo. App.) 63 S. W. (2d) 416.) Instruction 28, however, was followed immediately by an instruction telling the jury,

''These instructions are to be considered by you as a whole as the law of this case. That is—you are not to single out any one or some particular instruction as determining the legal aspect of the matter, but should take all of the instructions together and as a whole, and apply the law therein contained to the facts as you in your consideration of the evidence find them to be.''

The court in course of the preceding twenty-seven instructions had repeatedly admonished the jury as to the facts that must be established by the plaintiffs through a preponderance of the evidence in order to entitle them to recover; and throughout the instructions the court had advised the jury that the burden of proof was on plaintiffs to establish every material fact involved in the issues except that of contributory negligence.

As this court has often said, the whole law of a case cannot be embodied in a single instruction. (*Just v. Idaho Canal etc. Co., Ltd.,* 16 Ida. 639, 662, 102 Pac. 381, 133 Am. St. 140; *Advance-Rumely T. Co., Inc., v. Jacobs,* 51 Ida. 160, 173, 4 Pac. (2d) 657.) The instructions are to be considered by the jury as a whole. After all, the jurymen were men of average intelligence and evidently understood perfectly well that this instruction was meant to direct them in their deliberations, only in the event they decided to return a verdict in favor of the plaintiff under the other instructions given. It is not a model instruction and should not be given without containing the qualification, to the effect that it is only

to be applied in the event the jury finds the other issues in favor of the plaintiff. (64 C. J., secs. 531–535, pp. 591–600.)

Appellant complains of the action of the court in refusing to give the following requested instruction:

"2. You are instructed that under the law and the evidence, neither of the defendants were required by statute to give signals of the approach of the engine to the place where the collision occurred, and you are not at liberty to base a verdict, either in whole or in part, on the requirements of such a statute or the failure to do anything provided thereby."

and in giving to the jury the following instructions:

"Instruction No. 7.

"You are instructed, gentlemen of the jury, that Sec. 60–412 of the Idaho Code Annotated reads as follows:

" 'Bell or whistle to be sounded.—A bell of at least twenty pounds weight must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or an adequate steam, air, electric or other similar whistle must be attached, and be sounded, except in cities, at the like distance and be kept sounding at intervals until it has crossed the same, under a penalty of $100.00 for every neglect, to be paid by the corporation operating the railroad, which may be recovered in an action prosecuted by the prosecuting attorney of the proper county for the use of the state. The corporation is also liable for all damages sustained by any person, and caused by its locomotives, trains or cars, when the provisions of this section are not complied with.' "

"Instruction No. 8.

"You are instructed, gentlemen of the jury, that Sec. 39–101 of the Idaho Code Annotated reads as follows:

" 'Highways defined.—Highways are roads, streets or alleys, and bridges, laid out or erected by the public, or if

laid out or erected by others, dedicated or abandoned to the public.' "

Appellant insists that this roadway on which respondent was driving was not a "road or highway" within the meaning of the statute and that it was under no duty to ring a bell or sound a whistle on approaching this crossing; while respondent insists that it was such a "highway" as contemplated by the statute.

As we view the record before us it is unnecessary for us to determine whether this road, which had been open and used for fifteen or twenty years, was such a "road or highway" as is contemplated by the statute for the following reasons: The engineer and two other railroad employees testified that the whistle was sounded a number of blasts and that the bell was ringing, and the engineer says that he saw respondent's car approaching the track when the locomotive was some 300 feet from the crossing. This latter statement on the part of the engineer is in itself sufficient to require sounding the whistle or bell, in order to warn the driver of the automobile of the approach of the locomotive, irrespective of whether the crossing was a *private* crossing or a *public* crossing; and it would have been negligence on the part of the engineer and his employer, the railroad company, for him to fail to do so under these conditions and circumstances.

On the other hand, respondent and four eye-witnesses to the accident testified that no whistle was blown and no bell was rung. The decision as to the truth among these conflicting statements was for the jury to determine. The court apparently did not tell the jury whether this was or was not a "road or highway" within the meaning of the statute. He simply gave them the statute. Still the instruction undoubtedly had the effect of advising the jury that it was necessary for the railroad company to sound a whistle or ring a bell at this particular crossing on this occasion. Under the facts of the case, it being the company's duty to do so, it could not have made any difference with the jury whether that duty was imposed by statute or

arose from the common law duty resting on the company and its engineer, to exercise due care and reasonable diligence to avoid the accident. The jury was instructed to this effect by the court's Instruction No. 9.

If it be conceded for our present purpose that the company was not required to give the statutory signals at this crossing, still having actually discovered a driver about to cross in front of its approaching locomotive coasting down grade, it was nevertheless the company's common law duty to give a warning signal of the approaching locomotive.

Appellant assigns as error the action of the court in submitting to the jury two forms of verdict in favor of the plaintiffs and in receiving from the jury separate verdicts in favor of the plaintiffs and against defendants—one against the defendant Clinkingbeard for $1 and the other against the railroad company for $15,720. Clinkingbeard did not appeal. The railroad company appealed and *inter alia* urges that the verdicts are inconsistent and "make fish of one and fowl of the other."

The defendants were sued as joint tort-feasors. Clinkingbeard was the engineer operating the locomotive, and for that purpose of course was the agent of the railroad company. Although the jury found that the engineer was guilty of negligence, it is not at all surprising if they concluded that, since what he was doing was for the master and could not profit him in any way beyond his wages, it would be only fair for his employer to pay whatever damages had resulted from the negligent acts committed. This objection affords no grounds for disturbing a verdict returned against either of the tort-feasors.

The same issue of law here involved was raised in *Strickfaden v. Greencreek Highway Dist.*, 42 Ida. 738, 769, 248 Pac. 456, 49 A. L. R. 1057. This court answered it as follows:

"The verdict of a jury can only be set aside on appeal for want of substantial evidence to support that particular verdict, and not because the verdict may seem inconsistent with another verdict, or because another verdict is wrong,

or some other party has been discharged or exonerated. It would be a subversion of the ends of justice to allow a defendant to complain of a just judgment against it,—one supported by the overwhelming weight of evidence,—because its joint tort-feasor was not also held. Again, if it be contended by appellant that the verdicts are inconsistent and one of them is therefore capricious or the result of prejudice, what more reason is there for believing that the caprice or prejudice was directed against the appellant than to suppose that it was directed in favor of Dasenbrock and against respondent?"

Appellant is not in position to object to the verdict on the grounds of informality or insufficiency in the present case for the reason that it made no objection at the time to the submission of the separate verdicts to the jury, nor did it object or except to the reception of the verdicts when they were returned into court. (Sec. 7–218, I. C. A.; *Boomer v. Isley*, 49 Ida. 666, 290 Pac. 405; *Pedersen v. Moore*, 32 Ida. 420, 184 Pac. 475; *Campbell v. First Nat. Bank*, 13 Ida. 95, 88 Pac. 639; *Blackfoot Stock Co. v. Delamue*, 3 Ida. 291, 29 Pac. 97; *Hooks v. Vet*, 192 Fed. 314; *Ohio Valley Bank v. Greenebaum Sons*, 11 Fed. (2d) 87.)

The defendants made separate answers and appeared by different attorneys. The defendant Clinkingbeard has not appealed and the judgment as to him is final.

We have considered all the specifications of error assigned and those herein discussed have been considered in the order in which they are presented in the argument, and those not discussed herein are thought to be without sufficient merit to require consideration in a written opinion.

We find no error that has prejudiced any of appellant's substantial rights.

The judgment is affirmed, with costs in favor of respondents.

Givens, C. J., and Budge, Morgan and Holden, JJ., concur.

Petition for rehearing denied.